FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

OCT 29 2014

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ACUPATH LABORATORIES, INC.

                                    Plaintiff,                          **COMPLAINT**

            -against-                                        CV 14 6379
                                                            Civil Action No.:

MINNING XIE, MARCO SABINI, and                              **SEYBERT, J**
M & M MEDICAL TECHNOLOGY INC.

                                    Defendants.
----------------------------------------------------------------------X   **TOMLINSON, M**

        Plaintiff, ACUPATH LABORATORIES, INC. ("Acupath"), by its attorneys, as and for

its complaint alleges as follows:

## NATURE OF ACTION

        1.      Acupath brings this action against Defendants MINNING XIE ("Xie"), MARCO

SABINI ("Sabini"), and M & M MEDICAL TECHNOLOGY INC. ("M & M") (collectively,

"Defendants"), for monetary damages, injunctive relief and other relief based on, among other

things, Defendants' violation of Acupath's copyrights; Defendants' violations of the Computer

Fraud and Abuse Act; Defendants' breaches of their duty of loyalty and fiduciary duties;

Defendants' wrongful misappropriation, misuse, sale and modification of Acupath's computer

software, source code, servers, computers, equipment, resources, trade secrets, referral sources

and confidential and proprietary business information; Defendants' wrongful acts of unfair

competition and conspiracy to divert business opportunities and work from Acupath;

Defendants' tortious interference with existing and prospective business relationships of

Acupath; and Defendants' breaches and violations of their employment agreements and

agreements to comply with and be bound by Acupath's policies, terms and conditions of

employment, including confidentiality, non-solicitation and non-compete restrictions.

2.     Incredibly, while employed by Acupath, during work hours and while being substantially compensated by Acupath, Xie and Sabini formed and operated their own business, M & M, to sell and/or provide the same or substantially similar software, products and services as Acupath to competing medical laboratories and physicians with whom Acupath has or had business relationships.    To make matters worse, Defendants wrongfully used Acupath's computers, servers, records, resources, property and trade secrets to commence and operate their business.    Indeed, Defendants even hosted their business websites on Acupath's computers, servers and equipment.

**PARTIES**

3.     Acupath is a New York corporation with its principal place of business located at 28 South Terminal Drive, Plainview, County of Nassau, State of New York 11803.

4.     Xie is an individual residing at 6 John Street, Bethpage, New York 11714.  Xie worked for Acupath from 2002 to September 2014 providing computer and information technology services.

5.     Sabini is an individual residing at 55 Foster Avenue, Malverne, New York 11565. Sabini worked for Acupath from 2005 to September 2014.

6.     Upon information and belief, Xie and Sabini (collectively referred to as the "Individual Defendants") regularly transact business in Nassau County and the State of New York.

7.     M & M is a New York corporation with its principal place of business located at 6 John Street, Bethpage, New York 11714, which is also Xie's home address.

8.     Upon information and belief, Defendants have and continue to transact business under fictitious and/or various aliases and/or different names.

2

9.      Upon information and belief, the Individual Defendants also have incorporated separate businesses which provide the same and/or substantially similar services and/or goods as M & M technology under different names.   Upon information and belief, M & M is based on Sabini and Xie's first names, Marco and Minning, and Xie and Sabini own 100% of M & M.

10.      Upon information and belief, M & M regularly conducts business in Nassau and Suffolk Counties and the State of New York, and has further provided computer software, products and consulting services to competing medical laboratories and/or others, as well as to physicians and physician groups with whom Acupath has or had business relationships or were business prospects of Acupath.

11.      Upon information and belief, the wrongful actions by Defendants occurred in Nassau County and elsewhere and involve Acupath's computers, software, equipment, records, confidential information and trade secrets located in Nassau County.

## JURISDICTION AND VENUE

12.      This is an action for, among other things, copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*. (the "Copyright Act") and violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq*.

13.      This Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

14.      Additionally, this Court has supplemental and pendent jurisdiction under 28 U.S.C. § 1367 over claims arising under New York law.

15.      Additionally, in an Employment Contract with Restrictive Covenant, Non-Compete Provisions and Confidentiality Agreement (the "Agreement") executed by Xie, Xie consented to jurisdiction of the United States District Court for the Eastern District of New York for all disputes. *See* Agreement attached hereto as Exhibit "A".

3

16. Further, this Court has jurisdiction over all Defendants because they are individuals residing in or incorporated in New York, and this action arises from Defendants' transaction of business and supply of services pursuant to contracts in this state and from Defendants' commission of tortious acts in this state.

17. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §§ 1391(b) and 1400(a) because Nassau County is the county where Acupath has its principal place of business, where one or more of Defendants reside and/or conduct business, and because it is the county where a substantial number of the wrongful activities occurred that serve as the basis of the allegations in this complaint.

## ACUPATH'S BUSINESS AND TRADE SECRETS

18. Acupath was founded in 1995 and is currently doing business as a medical laboratory performing various advanced medical and diagnostic tests of patient tissue samples at its facility in Plainview, New York.

19. Acupath's laboratory services include specialized testing in anatomic pathology, hematology and molecule pathology for cancer, cytogenetics, flow cytometry, FISH and cytology. Acupath also provides advanced diagnostic test services for medical professionals in many other medical disciplines, including urology, dermatology, gastroenterology, podiatry, oncology and other specialties.

20. Beginning in 1998 and continuing to the present day, in connection with its laboratory services to medical professionals, Acupath has developed, at its own considerable expense, time and resources, many advanced medical tests and customized computer software programs and source code that allow its physician and professional clients to access advanced laboratory tests, services, test results and billing information over the Internet, and some of which is subject to patent and copyright protection.

4

21. Certain of the proprietary and customary software referred to the preceding paragraph is known as "Pathlab.net."

22. Acupath registered a copyright in Pathlab.net with the Copyright Office on September 23, 2014 and Acupath has previously placed on its software and source code the words "Copyright - Acupath" for many years. A copy of the Certificate of Registration for this copyright (Registration No. TX-7-910-395) is attached as Exhibit "B".

23. Pathlab.net, among other things, enables medical professionals to order and access laboratory test results over the Internet via Acupath's computer systems.

24. Pathlab.net facilitates the rendering of professional services to patients of medical professionals (i.e., the medical professionals request and access the laboratory tests and results for their patients).

25. Since 1998, Acupath has spent substantial time, money and effort in creating, developing, upgrading and maintaining Pathlab.net and its underlying source code.

26. Pathlab.net is highly confidential and proprietary, and Acupath has treated it as such.

27. Pathlab.net and its underlying source code have been kept by Acupath through a password protected security system and firewall protections. Xie and Sabini were paid substantial sums to protect this software and source code.

28. Pathlab.net and its underlying source code are not generally known and its formula, processes, devices and/or information are known only to Acupath and a select few of its highly trusted employees with a need-to-know knowledge to run its business. Pathlab.net and its source code provide Acupath with a competitive advantage over competitor laboratories, because, among other things, it allows Acupath to provide a superior, unique service to their clients.

5

29.    Acupath's software, programs, source code and trade secrets were developed over time at substantial time and expense to Acupath.

30.    Over the years, with respect to its proprietary diagnostic tests, medical tests and services, Acupath has spent substantial funds, time, and expense to develop, maintain and obtain sophisticated and advanced medical tests, licensing, required regulatory approvals, testing manuals, policies and procedures, and other customized and confidential information.

31.    These diagnostic and advanced medical tests and service sources are highly confidential and proprietary, and Acupath has treated them as such.

32.    These customized and advanced diagnostic and medical tests and services are generally not known or easily duplicated and are known only to a select few of Acupath's highly regarded employees who have a need to know in order to perform their work for Acupath. These advanced diagnostic and test services are expensive to develop and operate and provide Acupath with a competitive advantage over competing medical laboratories.

33.    Over the years, Acupath has spent substantial time and effort to develop good will and relationships with physicians, pathologists, physician groups, laboratories and other medical professionals who request Acupath to provide laboratory tests or other services for them and their patients.

34.    Acupath's client lists, referral sources, prospect lists, business relationships, prospective business relationships, good will and other information are highly confidential and proprietary, and Acupath has consistently treated them as such.

35.    Acupath's customized computers, computer software, source code, programs, trade secrets and confidential business and medical information need to be secure and protected for purposes of its business and the physicians and patients for whom it performs confidential medical laboratory tests.

6

36. The nature of the laboratory services that Acupath provides includes access to patients' confidential medical information which is protected by law. Thus, Acupath's computers, computer systems and proprietary confidential information are protected by security and firewalls and restricted by passwords and their access is limited.

## XIE AND SABINI'S DUTIES OF LOYALTY AND CONFIDENTIALITY, NON-SOLICIT, NON-COMPETE AGREEMENTS

37. In or about December 2002, Acupath hired Xie as a computer and information technology specialist to assist Acupath in monitoring, servicing, developing, operating and upgrading its computers, computer systems, software, networks, web-based programs and other confidential information.

38. Xie eventually was placed in charge of Acupath's software programming, and he was also given access to clients, medical professionals and potential clients with whom Acupath had developed or sought to develop business relationships.

39. As a result of Xie's positions, he had access to, was responsible for, and was paid substantial amounts to secure and protect Acupath's computers, servers, software, computer programs, networks, internet-based programs, source code, proprietary information and trade secrets.

40. On or about May 21, 2008, Xie also agreed to and signed a written employment Agreement. In the Agreement, Xie agreed not to compete with Acupath and further to maintain and keep secret all of Acupath's proprietary information and its computer software, sources codes and computer program information.

41. Xie's written Agreement states, in relevant part:

> 3.6 Employee understands, acknowledges and agrees that Employee will not attempt to or actually solicit, or approach, or attempt to obtain or actually obtain, transfer, redirect or divert any of the business from clients of Acupath who were clients of Acupath on the date of the execution of this Employment Contract

7

through the date of termination of Employee, whether such termination is by Acupath, or the voluntarily departure of Employee from the employ of Acupath…

. . .

3.9 EMPLOYEE AGREES THAT, WITHOUT THE PRIOR WRITTEN CONSENT OF ACUPATH IN EACH INSTANCE (WHICH CONSENT MAY BE GRANTED OR WITHHELD IN ACUPATH'S SOLE DISCRETION), WHILE EMPLOYED BY ACUPATH, AND FOR A TWO (2) YEAR PERIOD IMMEDIATELY FOLLOWING THE TERMINATION OF EMPLOYMENT (REGARDLESS OF WHETHER SUCH TERMINATION WAS INITIATED BY ACUPATH OR EMPLOYEE AND WHETHER "FOR CAUSE" OR NOT "FOR CAUSE", DIRECTLY OR INDIRECTLY, WHETHER ON EMPLOYEE'S OWN BEHALF OR ON BEHALF OF ANY PERSON, FIRM, CORPORATION, LIMITED LIABILITY COMPANY OR OTHER FACILITY OR ENTITY, AND WHETHER AS PRINCIPAL, EMPLOYEE, CONSULTANT, INDEPENDENT EMPLOYEE OR OTHERWISE:

> (A)    EMPLOYEE WILL NOT, DIRECTLY OR INDIRECTLY, ACTUALLY SOLICIT ANY CLIENTS OF ACUPATH WHO WERE CLIENTS OF ACUPATH ON OR AFTER THE DATE OF THE EXECUTION OF THIS EMPLOYMENT CONTRACT;

> . . .

> (C)    EMPLOYEE WILL NOT, DIRECTLY OR INDIRECTLY, APPROACH ANY CLIENTS OF ACUPATH WHO WERE CLIENTS OF ACUPATH ON OR AFTER THE DATE OF THE EXECUTION OF THIS EMPLOYMENT CONTRACT BY TELEPHONE, EMAIL, MAIL, COURIER SERVICE OR BY WRITTEN OR ORAL COMMUNICATIONS;

> (D)    EMPLOYEE WILL NOT, DIVERT, REDIRECT OR TRANSFER ANY BUSINESS FROM ACUPATH TO ANY OTHER LABORATORY OR BUSINESS…

4.1 The Employee understands and agrees that Employee may not work at all, including but not limited to as an Employee, Consultant or Independent Representative for any medical

8

laboratory that is a competitor or potential competitor, physician, hospital or medical center with a sales force for laboratory services, medical professionals who process or analyze medical specimens that are the same type of specimens that Acupath processes or analyzes for a period of one (1) year after the last day that Employee was employed by Acupath in a radius of thirty (30) miles from the Employee's principal office while employed by Acupath.

. . .

5.1 Employee hereby agrees to hold in strict confidence and not to disclose to any third party any of the Information as defined [in section 1.3 of the employment contract], and valuable, confidential and proprietary business, financial, technical, economic, sales, and/or other types of proprietary business information relating to Acupath (including all trade secrets), in whatever form, whether oral, written, or electronic (collectively, the "Confidential Information"), to which Employee has, or is given (or has been given), access as a result of Employee's employment with Acupath. It is agreed that the Information is confidential and proprietary to Acupath because such Information encompasses information that was acquired by Employee by virtue of Employee's employment with Acupath, technical know-how, trade secrets, or technical, financial, organizational, sales, or other valuable aspects of Acupath's' business and trade, including, without limitation, technologies, products, processes, plans, clients, personnel, operations, and business activities.

5.2 If the Employee actually reveals, or threatens to reveal Information that is confidential to Acupath, then Acupath shall be entitled to an injunction, including, but not limited to, a temporary restraining order, a preliminary injunction and/or permanent injunction restraining the Employee from disclosing or threatening to disclose Acupath's confidential information or Information. The right to secure an injunction is not exclusive, and Acupath may pursue any other remedies it has against the Employee for a breach or threatened breach of this Employment Contract, including the recovery of damages from the Employee.

. . .

6.1 Within three days of termination of Employee's employment by Acupath for any reason whatsoever, Employee or Employee's personal representative shall return to Acupath (a) all Confidential Information; (b) all other records, business plans, financial statements, manuals, memoranda, lists, correspondence, reports, records, charts, advertising materials, laptop with all software

intact, cell phone, fax machine, copy machine, GPS system, navigation system, DSL / Cable disconnection and/or service and other data or property delivered to or compiled by Employee by or on behalf of Acupath, its representatives, vendors, or customers or clients that pertain to the business of Acupath, whether in paper, electronic, or other form; and (c) all keys, credit cards, vehicles, and other property of Acupath. Employee shall not retain or cause to be retained any copies of the foregoing and shall permit no other person or entity to view any of the Information or Confidential Information at any time. Employee hereby agrees that all of the foregoing shall be and remain the property of Acupath, as the case may be, and be subject at all times to their discretion and control.

. . .

12.1 Because of the difficulty of measuring economic losses to Acupath as a result of a breach of the restrictive covenants, non-compete clauses or confidentiality clauses set forth in this Employment Contract, and because of the immediate and irreparable damage that would be caused to Acupath for which monetary damages would not be a sufficient remedy, Employee agrees that in addition to all other remedies that may be available to Acupath at law or in equity, Acupath shall be entitled to specific performance and any injunctive or other equitable relief as a remedy for any breach or threatened breach of the aforementioned restrictive covenants, non-compete clauses and/or confidentiality clauses.

42.    As a result of his key position with Acupath and the trust placed in him, Xie was paid substantial amounts in salary, bonuses and benefits by Acupath over the years. In fact, since 2008, Xie was paid by Acupath over $700,000.00 in compensation, plus substantial benefits.

43.    In or about March 2005, Acupath hired Sabini as its Chief Information Officer ("CIO") to, among other things, secure, protect, operate, maintain, upgrade, develop and operate all of Acupath's computers and computer systems. Sabini also provided other services to Acupath and was given access to its customers and others with whom Acupath had a business relationship.

10

44.    As a result of his key positions and duties, Sabini had access to, was responsible for, and had control over, all of Acupath's computer systems and electronic information and access.

45.    This included knowledge of passwords, source code, security procedures and firewalls for Acupath.

46.    As a result of his positions with Acupath and the trust placed in him, Sabini was paid substantial salary, bonuses and benefits from Acupath during his employment with Acupath.  Further, since 2008, Sabini was paid been paid by Acupath over $700,000.00 in compensation, plus substantial benefits.

47.    In 2002, 2005 and March 2012, while employed at Acupath, Xie and/or Sabini were provided with copies of Acupath's Employee Handbook and Acupath's Personnel and Benefits Guide (the "Guide").  Xie and Sabini executed written acknowledgments in which they agreed to comply with and be bound by the policies, terms and conditions of employment contained in those Handbooks and Guides.   Applicable excerpts of the 2012 Employee Handbook (the "Handbook") and Xie and Sabini's executed acknowledgments of the same are attached as Exhibit "C".

48.    Acupath's Handbook provides, in relevant part:

Nature of Employment and Non-Compete

...[P]ersonnel shall not during the term of employment, and for the twelve (12) month period immediately following the termination of the term of employment regardless of whether such termination was initiated by Acupath or Employee...

(a) solicit or send notices or announcements to any referring sources of Acupath except on behalf of Employer;

(b) conduct any advertising or send any mailing which are [or] may be read or received by any referring sources of Acupath except on behalf of Acupath;

11

(c) become employed by any other laboratory and/or compete with any competitor of Acupath in any manner; ...

(e) solicit Acupath's referring physicians or clients to refer specimens to the Employee or to the lab for which Employee may work or to another laboratory or otherwise interfere with the relationship of Acupath with its referring physicians, medical centers, hospitals, or laboratories. . .

In the event the Employee breaches or threatens or attempts to breach any provision of the aforesaid restriction against competing with Acupath, in addition to Acupath's other rights and remedies, the Employee shall forfeit any right to any compensation or benefits to which the Employee might otherwise have been entitled. As an Acupath Employee, you understand and agree that Acupath's remedy at law for any such breach will be inadequate and that Acupath shall be entitled to seek and obtain injunctive relief restraining the Employee from breaching or continuing to breach or violating or continuing to violate any provision set forth in this Employee Handbook. The right by Acupath to secure an injunction is not exclusive, and Acupath may pursue any other remedies it has against the Employee for a breach or threatened breach of the terms and conditions of this Employee Handbook, and Acupath shall be entitled to seek the recovery of damages from Employee as well as costs and expenses incurred by Acupath.

<u>Non-Disclosure and Confidentiality of Information</u>

In the normal course of business employees may be given or may acquire information about the business of Acupath, its affiliates, its clients, and its employees that is not available to the general public. This information is confidential and is considered exclusive property of Acupath. The term "confidential information" shall mean and include, but is not limited to, financial data, business plans and strategies, client lists, computer software programs and employee information, business operations and methods, financial performance, contractual relationships, business partners and relationships, names or the identity of clients and/or customer of Acupath, marketing modules and/or strategies, lists with information related to existing or prospective clients and/or customers, any and all material, data, discoveries, ideas improvements, information, inventions, formulae, patterns compilations, programs, devises, methods, techniques, processes, know how, plans (marketing, business, strategic, technical or otherwise), arrangements, pricing and/or other information of, or relating to Acupath (as well as its clients, customers, and/or vendors) that is confidential, proprietary, and/or a trade secret, (i) by its nature, (ii) based on how it is treated or designated by

Acupath, (iii) based on the significance of its existing or its potential commercial value or business utility; (iv) such that its appropriation, use or disclosure would have a material adverse effect on the business or planned business of Acupath, or (v) as a matter of law.

All employees are responsible for respecting and maintaining the confidential nature of such information.

There is no requirement that any Confidential Information be reduced to a writing to meet the definition of "Confidential Information" as set forth above. Work Product (as defined below) is included in the definition of Confidential Information. To the extent Confidential Information is reduced to a writing, there is no requirement that any documents, information, materials or media be marked "confidential" or bear any similar marking in order to fall within the definition of "Confidential Information."

"Work Product" means all patents and patent applications, all inventions, innovations, improvements, developments, methods, designs, analyses, drawings, reports, creative works, discoveries, software, computer programs, modifications, enhancements, know-how, formulations, concepts and ideas, all similar or related information (in each case whether patentable or not), all copyrights and copyrightable works, all trade secrets, confidential information, and all other intellectual property and intellectual property rights, that are written, conceived, reduced to practice, developed, and/or made by "Employee", either alone or with others in the course of "Employee's employment with or services to Company (including employment or services prior to the Effective Date).

Due to the complex and competitive nature of the business of Acupath and its sophisticated and proprietary financial billing, computer systems, computer software, business plan, patent(s), methods of operations and specimen examination matters, the confidentiality of information concerning Acupath is of critical importance. Employees will, due to his or her duties and position of trust under as an employee of Acupath, as the special, unique and extraordinary nature of his or her services, the Employee will have access to and obtain Information, as defined below, concerning the Employer which is confidential and proprietary to Acupath, including but not limited to information concerning specimens, computer software and programs, referring sources, company ownership and corporate hierarchy, business and financial methods, financial arrangements with the Employee, this Employee Handbook, systems, plans, policies and directions (collectively, the "Information"). The Employee agrees that he or

13

she will not during, or at any time after the term of her employment, directly or indirectly, disclose or use any Information for any reason whatsoever, without the prior written consent of the Employer in each instance except on behalf of Acupath. The Employee consents and agrees that if he or she violates any of the provisions of this Employee Handbook, Acupath would sustain irreparable harm and, therefore, in addition to any other remedies which Acupath may have under in accordance with this Employee Handbook, any employment agreement with Employee or otherwise, Acupath shall be entitled to obtain injunctive relief restraining the Employee or any third party from committing or continuing any such violation (or participating therein) of the terms and conditions of this Employee Handbook or any employment agreement, and the Employee shall not object to any such application. The right to secure an injunction is not exclusive, and Acupath may pursue any other remedies it has against the employee for a breach or threatened breach of this condition, including the recovery of damages from the Employee.

The duty to protect the confidence of Acupath, its clients, and its employees includes avoiding intentional disclosures, as well as taking care to avoid accidental disclosures. All employees must exercise extreme care in how and where they discuss, document, and store the confidential information that relates to business activities of Acupath, its clients, and its employees.

Confidential information of Acupath, its clients or employees may only be disclosed, whether orally or in writing, within Acupath to those who need to know the information to perform their job functions. Confidential information is not to be disclosed or used outside of Acupath except for legitimate and legal reasons related to Acupath's business interests or as required by law.

Upon separation of employment for any reason, all confidential information must remain in the possession of Acupath, and all employees are to return to Acupath all originals and copies of such confidential information.

. . .

Both during and after the term of employment by Acupath, "Employee" shall not, in any manner, directly or indirectly: (i) appropriate, download, print, copy, image, fax, e-mail, remove, use, disclose, divulge, and/or communicate any Confidential Information, to or for the benefit of any Person (as defined below), including (without limitation) originals or copies of any Confidential Information, in any media or format, except for Acupath's benefit within the course and scope of Employee's

14

employment, or with the prior written consent of the Chief Executive Officer of Acupath; or (ii) take or encourage any action that would circumvent, interfere with, or otherwise diminish the value or benefit of any Confidential Information to Acupath. All Confidential Information is the exclusive property of Acupath, the appropriation, use and/or disclosure of which is governed and restricted by the terms of and the acceptance by the Employee of this Employee Handbook.

Return and Review. All Confidential Information, and all other information and property affecting or relating to the business of Acupath (including without limitation files, documents, materials, records, notebooks, customer lists, business proposals, contracts, agreements and other repositories containing information concerning Acupath or the business of Acupath), within the Employee's possession, custody or control, regardless of form or format, shall remain, at all times, the property of Acupath. At any time that Acupath may request, during or after the term of employment of Employee by Acupath, Employee shall deliver to Acupath, all originals and copies of Confidential Information, and all other information and property affecting or relating to the business of Acupath, within Employee's possession, custody or control, regardless of form or format; provided that, upon the Termination Date (as defined below), Employee shall effect such delivery without the necessity of a prior Company request. Both during and after the Employment Period, Acupath shall have the right of reasonable access to review, inspect, copy, and/or confiscate any Confidential Information, and any other information and property affecting or relating to the business of Acupath, within Employee's possession, custody or control.

. . .

Computers and Other Resources

Computers are an expensive and valuable resource and are to be used only for Acupath's business. Any use of computer resources other than for official business may be considered misconduct, and the employee engaging in such activity will be subject to discipline, which may include termination.

. . .

All computer programs designed for and used by Acupath are property of Acupath. No program or data should ever be copied for personal use or given to anyone without the express written consent of the Chief Executive Officer. All employees must be in compliance with all software licenses and all confidentiality rules.

15

Under no circumstances are copies of software to be installed on Acupath's computers unless the appropriate license to do so has been obtained. If you have any concerns with software licenses or operations of computers and/or computer software, you must speak to the Information Technology officer of Acupath, who may be emailed at IT@acupath.com.

Acupath computer systems and other technical resources are provided for the use of Acupath business and are to be reviewed, monitored and used in the pursuit of Acupath business. As a result, computer software and other data are readily available to numerous persons. If, during the course of employment, an employee performs or transmits work on an Acupath computer or other technical resource, his or her work is subject to the review and examination of Acupath. Acupath expressly reserves the right to search an employee's computer with or without notice, including monitoring of all emails by the Chief Executive Officer, the director of the human resources department and/or the Information Technology department.

If you transmit any Acupath business documents to any personal email account, including but not limited to accounts that you may use at yahoo.com, gmail.com; optionline.net, etc., you will be disciplined and you may be terminated from your employment by Acupath. No work or work-product shall be transmitted by you or to you to any other email account, other than the email account issued to you with the ending @acupath.com.

An employee may not make any copies, backups or duplications to any backup device, including but not limited to flash drives, external hard drives, etc., of any files that are on their computer at Acupath. Making copies, backups or duplications of any files from the Acupath computers may result in immediate termination of your employment.

An employee may only access files or programs that he/she has permission to enter. Unauthorized review of files, copying of software, dissemination of passwords, damage to systems, removal of files, removal of programs or software or improper use of information contained in the computer system may be grounds for disciplinary action, up to and including termination.

Acupath's property, such as computers, printers, laptops, cellular telephones, office telephones, modems, and beepers, are not to be used for personal use or for illegal activities. If Acupath provides you with a cellular telephone or pays for your monthly cellular telephone service, Acupath may obtain copies of all of your cellular telephone bill records without your consent. There should

be no expectation of privacy in your use of Acupath's cellular telephone or a cellular telephone which payment for such service is reimbursed to you by Acupath. Bills and other documentation related to this type of equipment are the property of Acupath and may be reviewed and used only for purposes Acupath deems appropriate.

. . .

<u>Employee Privacy, Electronic Mail and Voice Mail</u>

The entire computer system, hardware, and all data and information contained in it the property of Acupath. It has been provided for your use in conducting Acupath business only. All communications and information transmitted by, received from, or stored in this system are Acupath's records and is Acupath's property. The e-mail and computer system are to be used for Acupath's purposes only. Telephone systems at Acupath and for cell phones provided by Acupath for certain employees shall only be used for business purposes and may not be used for personal purposes.

. . .

<u>Illegal Copying</u>

Employees may not illegally copy material protected under copyright law or make that material available to others for copying. Employees are responsible for complying with copyright law and applicable licenses that may apply to software, files, graphics, documents, messages, and other material for which a registration fee is charged without first obtaining the express written permission of the Chief Executive Officer.

<u>Outside Employment and Interests</u>

Employees who hold jobs in addition to their employment with Acupath must notify Acupath in writing of this employment. An employee's second job cannot adversely affect the work performance of an Acupath employee.

If you assist a competitor of Acupath or you work for a competitor of Acupath without Acupath's written consent, you will face discipline, which may include immediate termination.

49.     Xie and Sabini were trusted and highly ranked employees of Acupath who, while

employed by and being paid substantial compensation from Acupath, used and abused their

positions of trust and leadership, as well as Acupath's computers, property and trade secrets to profit themselves and divert business and opportunities of Acupath to other competing medical labs themselves and physicians and physician groups with whom Acupath had business relationships or were business prospects which Acupath introduced them to or they became aware of as a result of their employment with Acupath.

50.     As a result of their employment and due to their duties and responsibilities, Defendants were given access to and were in close contact with Acupath clients, referral sources and business relationships which had been developed over many years and potential business relationships.

51.     Xie and Sabini had a confidential relationship and fiduciary duty to Acupath.

## XIE AND SABINI'S WRONGFUL AND DISLOYAL ACTS WHILE EMPLOYED BY ACUPATH

52.     Upon information and belief, in or about 2008 and perhaps earlier, while employed by, working for and on the payroll of Acupath, Xie and Sabini founded and formed M & M and other companies.

53.     Upon information and belief, M & M has provided and continues to provide competing medical laboratories, clients, physicians, prospects and referral sources of Acupath with computer software that is similar to Acupath's computer software which can be accessed internally within network and remotely through the Internet.

54.     Upon information and belief, M & M has provided and continues to provide competing medical laboratories, clients, physicians, prospects and referral sources of Acupath with source code, programs, computer products and consulting services the same or similar to those they provided for Acupath.

55.     Indeed, documents Acupath discovered on Acupath's work computers confirm that M & M was selling and providing to competing medical laboratories and others the same or

18

similar software, products and services as Acupath.  Copies of documents Defendants placed

and stored on Acupath's work computers regarding their business are attached hereto as Exhibit

"D." One of those documents provides, in pertinent part, as follows:

M & M MEDICAL TECHNOLOGY        6 John Street
                                Bethpage, NY 11714
                                1-888-540-5775

## Laboratory Information System

### About Us
M & M Medical Technology provides both commercial laboratories and
physician-office laboratories with a user-friendly, state-of-the art Laboratory
Information System (LIS) necessary for managing anatomic and diagnostic
operations within one comprehensive dual-based (part windows, part web)
software.  Created by a team of medical information technology experts, unlike
other LIS, M & M Medical offers software that can be accessed not only
internally within network, but also remotely through the Internet.

### System Highlights

- Multiple Tests: Flow Cytometry, Bone Marrow & Pathology
- Whole cycle of work flow: accession, grossing, signing out and reporting
- Able to run on both PC and Mac through Citrix.  User is able to use it
  from anywhere as long there is internet access.
- Customized pathology and flow reports.  And also summary report
- Billing Summary
- EMR Interface
- TC/PC Capability
- Physician report reviewing and printing through the Internet
- Able to extract gate percentage data from PDF raw report
- Able to display PDF raw report and allow user to crop picture for report
  reference.

56.    Further, M & M's website also confirms that M & M was selling, providing and

using and is still selling, providing and/or using the same or similar software, programs, source

code and services as Acupath to competing medical laboratories and physician office

laboratories.  Copies of portions of the M & M website are attached as Exhibit "E".  For

example, M & M's website provided as follows:

### Welcome to M & M Medical Technology

M & M Medical Technology provides both physician-office laboratories and commercial laboratories with a user-friendly, state-of-the art Laboratory Information System necessary for managing anatomic and diagnostic operations within one comprehensive dual based (part Windows, part web) software.  Created by a team of medical information technology experts, unlike other Laboratory Information Systems, M & M offers a software that can be accessed not only internally within network, but also remotely through the web.

...

Report View Users

Our Report generator gives you with latest technology and state-of-the-art tool designed report

Exhibit "E".

57.    To make matters worse, Defendants used Acupath's work computers, servers, facilities, resources, employees and equipment to operate and service their own business. Defendants even hosted websites for M & M's business on Acupath's computers and servers during work hours while Xie and Sabini were employed by and being paid by Acupath.

58.    Upon information and belief, the software, source code and other programs M & M sells, uses, provides and/or previously provided or sold to competitors of Acupath while on Acupath's payroll are the same as or slightly modified versions of the unique and customized software known as Pathlab.net and source code, software, programs and property created, developed and used by Acupath.

59.    Upon information and belief, M & M also sells, uses and/or provides the same or similar testing documents, procedures and/or computer services and information developed by Acupath at great time and expense to Acupath's competitors and former, current or prospective medical professionals with whom Acupath does business.

60.    Upon information and belief, Defendants also used Acupath's computer systems, software, customized software programs, property, servers and source code (including

Pathlab.net) stored information, records, diagnostic test procedures, manuals, resources, protocols, client lists and or client information to commence, operate and conduct their own business.

61.     Upon information and belief, Defendants conspired to utilize Acupath's property and to divert business, profits and opportunities from Acupath while Xie and Sabini were employed by Acupath.

62.     Upon information and belief, Xie and Sabini conducted business on behalf of themselves and M & M while at Acupath's offices during work hours, utilizing Acupath's computers, property and resources.

63.     Upon information and belief, Xie and Sabini utilized Acupath's property, records, assets, personnel and resources to create and operate M & M's business and to solicit and do business for themselves with Acupath competitors, such as NewPath Diagnostic Laboratories, as well as clients, referral sources and business relationships and potential business relationships of Acupath whom Acupath introduced to them.

64.     As a result of Defendants' wrongful actions, Acupath lost sales and business from physicians and entities with whom Acupath used to do business or including, but not limited to, Michael Li, M.D.

65.     Xie and Sabini also conspired to conceal their wrongful and disloyal actions.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(As Against All Defendants)**
(Copyright Infringement, 17 U.S.C. §§ 101, *et seq.*)

66.     Acupath repeats, realleges and incorporates by reference paragraphs "1" through "65" above as completely as if set forth in full herein.

67.     Acupath owns a copyright and exclusive rights in and to the Pathlab.net software, as set forth in the Registration attached hereto as Exhibit "B" and possesses all exclusive rights

21

under the Copyright Act, including the rights of reproduction, adaptation and distribution. 17 U.S.C. § 106 and 501.

68.     As described herein, Defendants, and each of them, have directly and/or indirectly infringed the copyright of Acupath in the copyrighted Pathlab.net software in one or more of the manners described below, including without limitation by means of improperly taking, copying and using the software, source code, modifying the software and distributing the software to others without the consent of Acupath.

69.     Defendants have reproduced, adapted and/or distributed the copyrighted Pathlab.net software, without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

70.     Alternatively or in addition, Defendants are contributorily liable to Acupath for the infringement of the copyright in the Pathlab.net software. Xie, Sabini and M & M have, with actual or constructive knowledge, or willful blindness, materially contributed to unauthorized reproductions, adaptions and/or distributions of the copyrighted Pathlab.net software by others, including but not limited to each other, and their customers or prospective customers have encouraged and induced such infringing activity through the acts and conduct alleged herein, and have failed and refused to take simple measures to limit or curtail such infringing activity, such as by ceasing their own direct infringements or discontinuing material support to direct infringers.

71.     Alternatively or in addition, Defendants are vicariously liable to Acupath for the infringement of the copyright in the Pathlab.net software. Xie, Sabini and M & M had both the legal and practical right and ability to supervise and control the infringing conduct of others, including but not limited to each other, and their customers or prospective customers, but have failed and refused to exercise such supervision and control to limit infringement to the extent

22

required by law. As a direct and proximate result of such refusal, such other parties have infringed the copyright in the Pathlab.net software, including by reproducing, adapting and/or distributing it. Defendants derive and continue to derive a direct financial benefit from this infringement.

72.     Each such infringement of the copyrighted Pathlab.net software described above constitutes a separate and distinct act of infringement. Each of the Defendants has committed and will commit each act of copyright infringement with the knowledge that it was not authorized to exercise any of Plaintiff's rights (or authorize others to exercise any of the rights) respecting the Pathlab.net software and other works in which Plaintiff owns copyrights. The acts of infringement by Xie, Sabini and M & M were thus willful, in disregard of, and with indifference to, the rights of Acupath.

73.     As a direct and proximate result of the infringements by Xie, Sabini and M & M, Acupath is entitled to damages and to the profits of Xie, Sabini and M & M, and each of them, in amounts to be proven at trial which are not yet determined, but are believed to be in excess of $500,000.

74.     Acupath is further entitled to its full costs pursuant to 17 U.S.C. § 505.

75.     As a result of the actions of Defendants, Acupath has sustained, and, unless these Defendants are enjoined and restrained by this Court, will continue to sustain, substantial, immediate and irreparable injury for which there is no adequate remedy at law.

76.     Unless restrained by the Court, Defendants will continue to engage in such willful copyright infringement. Acupath is entitled to an injunction enjoining further infringement of its copyright by these Defendants.

## AS AND FOR A SECOND CAUSE OF ACTION
### (As Against All Defendants)
(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq.*)

77.     Acupath repeats, realleges and incorporates by reference paragraphs "1" through "76" above as completely as if set forth in full herein.

78.     Defendants intentionally accessed and/or exceeded their authorized access to Acupath's protected computers, servers and computer systems and, upon information and belief, they used Acupath's computers and Internet connections and network to:

    a.   access Acupath's proprietary information and programs, including the Pathlab.net software;

    b.   copy Acupath's proprietary information and programs, including the Pathlab.net software and source code;

    c.   alter Acupath's proprietary information and programs, including the Pathlab.net software and source code;

    d.   transmit Acupath's proprietary information and programs, including the Pathlab.net software and source code, to persons not entitled to receive them;

    e.   host and use illegal copies and derivative copies of Acupath's proprietary information and programs, including the Pathlab.net software; and/or

    f.   host the websites and other functions of the M & M business on Acupath's computers, services and equipment,

all in violation of 18 U.S.C. § 1030(a)(2).

79.     Acupath's computers and computer systems were and are used in and affect interstate commerce.

80.     After Acupath discovered that Defendants had been using Acupath's computers in the manner described above, Acupath incurred and continues to incur substantial expenses to investigate, repair and prevent unauthorized access in the future to Plaintiff's computers, computer systems, data, programs, networks and information and the extent to which Xie, Sabini and M & M

impaired or may have otherwise compromised the integrity of its computers, data, programs, networks, systems and information.

81.     In connection with these efforts, Acupath has paid personnel and outside consultants well over $5,000.00 in wages, fees and expenses. Acupath would not have paid for these amounts but for Defendants' violations of 18 U.S.C. § 1030(a)(2).

82.     Defendants' violations of 18 U.S.C. § 1030(a)(2), have resulted in a loss to Acupath exceeding $5,000 during a one-year period within the meaning of 18 U.S.C. § 1030(c)(4)(i)(I).

83.     As a result of these and other wrongful acts, Acupath is entitled to damages in an amount not yet determined, but believed to be in excess of $250,000.00.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(As Against Xie and Sabini)**
(Faithless Servant)

84.     Acupath repeats, realleges and incorporates by reference paragraphs "1" through "83" above as completely as if set forth in full herein.

85.     At all times during their employment with Acupath, Xie and Sabini owed Acupath a fiduciary duty of undivided loyalty and fidelity to Acupath's interests; each was obligated to act solely and exclusively in Acupath's best interests, and each was prohibited from acting in a manner contrary to Acupath's legitimate business interests.

86.     Xie and Sabini, while employed by Acupath, breached their duties, loyalty and obligations to Acupath by, among other things, misappropriating Acupath's Trade Secrets and Confidential Information; wrongfully using Acupath's computers and property for their own purposes; wrongfully providing competitors with computer software and services based upon Acupath's property; facilitating the diversion of business and business opportunities of Acupath; and engaging in other wrongful actions contrary to the interests of Acupath while being paid by Acupath.

25

87.     Xie and Sabini's repeated willful misconduct and disloyalty permeated their service to Acupath in its most material and substantial part, as the misconduct involved misappropriating confidential and trade information fundamental to Acupath's business, which Xie and Sabini were paid to protect and which confidential and trade information they put at great risk.

88.     Xie and Sabini acted adversely to Acupath's interests.

89.     Due to Xie and Sabini's breach of these duties, Xie and Sabini must each forfeit their compensation and benefits during their period of disloyalty, in an amount not yet determined, but believed to be over $700,000.00 for Xie and over $700,000.00 for Sabini.

90.     By reason of the above, Acupath has also suffered and will continue to suffer irreparable harm and Acupath is entitled to injunctive relief, as well as punitive damages and compensatory damages in an amount not yet determined but believed to be in excess of $500,000.00.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(As Against Xie and Sabini)**
(Breaches of Fiduciary Duties)

91.     Acupath repeats, realleges and incorporates by reference paragraphs "1" through "90" above as completely as if set forth in full herein.

92.     At all times during their employment with Acupath, Xie and Sabini owed Acupath a fiduciary duty of undivided loyalty and fidelity to Acupath; each was obligated to act solely and exclusively in Acupath's best interests; and each was prohibited from acting in a manner contrary to Acupath's legitimate business interests.

93.     Xie and Sabini knowingly breached their fiduciary duties and obligations to Acupath by misappropriating Acupath's Trade Secrets and Confidential Information; using Acupath property for their own personal gain; wrongfully assisting in diverting business and

26

business opportunities of Acupath; wrongfully using Acupath's software, source code, property and computers and hosting websites of their business on Acupath's computers; wrongfully assisting third parties to compete against Acupath; interfering with Acupath's business relationships, diverting business and opportunities from Acupath to competitors; and engaging in other wrongful actions contrary to the interests of Acupath while being paid and employed by Acupath.

94.     By reason of the above, Acupath has suffered and will continue to suffer substantial monetary damages and irreparable harm.  Acupath is entitled to injunctive relief, damages and punitive damages from Xie and Sabini in amounts not yet presently determined as a result of their willful and repeated breaches of their fiduciary duties.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(As Against All Defendants)**
(Misappropriation and Use of Trade Secrets)

95.     Acupath repeats, realleges and incorporates by reference paragraphs "1" through "94" above as completely as if set forth in full herein.

96.     Acupath's property, computers, computer servers, systems, software, customized software programs (including Pathlab.net), source code, stored information, diagnostic test procedures, manuals, protocols, customer lists and customer information ("Trade Secrets and Confidential Information") are trade secrets subject to protection under the laws of the State of New York.

97.     Acupath's property and Trade Secrets and Confidential Information are secret and the knowledge of its formula, process, device and/or information are not generally known.

98.     Acupath has employed precautionary measures to preserve the exclusive knowledge and to maintain the secrecy of Acupath's property and Trade Secrets and Confidential Information.  In this regard, Acupath's Trade Secrets and Confidential Information

has been secured and protected by passwords, protected security systems, limited access and firewall protections.

99.    Acupath's property and Trade Secrets and Confidential Information are necessary to Acupath's business and provided, and continues to provide, Acupath with an advantage over competitors.

100.    Xie and Sabini were in key positions of leadership and trust and they obtained knowledge of Acupath's Trade Secrets and Confidential Information, business relationships and property as a result of their positions and employment with Acupath.

101.    In breach of Xie's Agreement, Xie improperly conspired and used Acupath's Trade Secrets and Confidential Information and property for Defendants' benefit and financial gain to the detriment of Acupath.

102.    In breach of Xie and Sabini's agreements to comply with the policies, terms and conditions in the Employee Handbook and Guides, Xie and Sabini improperly conspired and used Acupath's Trade Secrets and Confidential Information and property for Defendants' benefit and financial gain to the detriment of Acupath.

103.    In breach of their confidential relationship with Acupath and duties owed to Acupath, Xie and Sabini improperly conspired and used Acupath's Trade Secrets and Confidential Information and property for Defendants' benefit and financial gain to the detriment of Acupath.

104.    Xie and Sabini, as individuals and by and through M & M, have willfully and intentionally used Acupath's Trade Secrets and Confidential Information and property, including its computer systems, computer programs, servers, customized software, source code, tests, trade secrets and other confidential and proprietary information belonging to Acupath, for their own purposes; to solicit business for M & M from, including, but not limited to, Acupath's clients,

referral sources, and business relationships, and as to divert business and business opportunities from Acupath to M & M, competing medical laboratories, themselves and/or others.

105.    Upon information and belief, Xie and Sabini, as individuals and by and through M & M, have also wrongfully misappropriated Acupath's Trade Secrets and Confidential Information concerning its specialized medical, laboratory and diagnostic tests by providing such confidential information and documents to competitors of Acupath and others and by soliciting other employees who worked for them or with them to assist them.

106.    By their wrongful actions, Xie and Sabini have knowingly misappropriated, conspired and used Acupath's trade secrets in breach of their duties of loyalty and fiduciary duties, as well as their agreements and obligations to preserve the confidentiality of their employers' proprietary information not to disclose such information to third parties.

107.    M & M knew and was aware that Xie and Sabini had wrongfully misappropriated Acupath's trade secrets and property in violation of their duties of loyalty, fiduciary duties, obligations to and agreements with Acupath.

108.    The aforementioned conduct of Defendants constitutes a willful misappropriation of Acupath's confidential property, trade secrets, proprietary business information and good will with the deliberate intent for Defendants' own financial gain and to injure Acupath's business.

109.    By reason of the above, Acupath has suffered and will continue to suffer irreparable harm and substantial damages in an amount not yet determined, but believed to be in excess of $500,000.00.

110.    By reason of the above, and due to the fact that the Defendants' conduct was willful, wanton, and malicious, Acupath should be awarded punitive damages in an amount to be determined at trial, but not less than $5,000,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (As Against All Defendants)
(Unfair Competition)

111.   Acupath repeats, realleges and incorporates by reference paragraphs "1" through "110" above as completely as if set forth in full herein.

112.   Defendants have willfully and wrongfully engaged in unfair competition against Acupath for their own financial gain.

113.   Defendants have, in bad faith, misappropriated Acupath's Trade Secrets and Confidential Information that Xie and Sabini obtained solely as a result of their employment with Acupath to unfairly compete with Acupath and divert business to M & M, which Xie and Sabini own, and themselves by, among other things, wrongfully providing products, services and information to competitors and others while on Acupath's payroll.

114.   Defendants knew they lacked authorization to use Acupath's Trade Secrets and Confidential Information.

115.   Defendants have unfairly benefited and gained commercial advantage as a result of their use of Acupath's Trade Secrets and Confidential Information belonging exclusively to Acupath.

116.   By reason of the above, Acupath has suffered and will continue to suffer direct financial loss, lost dealings, loss of business, and loss of profits in an amount not yet determined, but believed to be in excess of $500,000.00.

117.   By reason of the above, and due to the fact that Defendants' conduct was willful, wanton and malicious, Acupath should be awarded punitive damages in an amount to be determined at trial, but not less than $5,000,000.00.

30

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (As Against All Defendants)
(Tortious Interference With Economic Business Relations And Advantage)

118.    Acupath repeats, realleges and incorporates by reference paragraphs "1" through "117" above as completely as if set forth in full herein.

119.    By virtue of Xie and Sabini's employment with Acupath, Defendants were aware of Acupath's business, clients, referral sources, and physicians with business relationships with Acupath.

120.    Defendants intentionally and maliciously interfered with these business relationships and the economic advantage of Acupath by, inter alia, knowingly using Acupath's Trade Secrets and Confidential Information to: divert business from Acupath's clients, referral sources, and/or physicians with whom Acupath had a business relationship to themselves and/or competing medical laboratories, and to cause those persons to abandon their business relationship with Acupath; by misappropriating, using, and disclosing Acupath's Confidential Information and Trade Secrets and proprietary information to competitors, wrongfully diverting Acupath's business opportunities, clients and business relationships, and wrongfully interfering with the clients and existing and potential business relationships and referral sources of Acupath in violation of the rights of Acupath.

121.    Defendants acted without privilege or justification.

122.    Defendants' interference with Acupath's existing and prospective business relationships was accomplished by wrongful means.

123.    As a result of Defendants' wrongful actions, Acupath has lost business and sales from clients for whom Acupath used to provide services.

31

124.    By reason of the above, Acupath has suffered and will continue to suffer irreparable harm and substantial damages in an amount not yet determined, but believed to be in excess of $500,000.00.

125.    By reason of the above, and due to the fact that the Defendants' conduct was willful, wanton, and malicious, Acupath should be awarded punitive damages in an amount to be determined at trial, but not less than $5,000,000.00.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (As Against Xie and Sabini)
(Breach of Agreements)

126.    Acupath repeats, realleges and incorporates by reference paragraphs "1" through "125" above as completely as if set forth in full herein.

127.    Xie and Acupath had entered into an invalid employment Agreement, which is annexed hereto as Exhibit "A."

128.    Upon information and belief, Xie has violated and/or intends to continue to violate, among other things, sections 3.6, 3.9. 4.0, 5.0 and 6.0 of the Agreement.

129.    Xie's use, disclosure and misappropriation of Confidential Trade Secrets and Information, his improper solicitation of Acupath's clients and referral sources for the benefit of himself and/or competing laboratories, his breaches of his fiduciary obligations and his other wrongful acts, as set forth above, constitute a breach of the express provisions 3.6, 3.9. 4.0, 5.0 and 6.0 in the Agreement.

130.    Additionally, contracts in New York imply a covenant of good faith and fair dealing in the course of performance to protect a contracting party's right to receive full benefit of the contract.

131.    Through his wrongful conduct as set forth above, Xie failed to exercise good faith and deal fairly in fulfilling the terms and covenants of the Agreement as contemplated by the

32

contracting parties, thereby denying Acupath all rights and benefits under the agreement to which it is entitled.

132.    Xie and Sabini also entered into agreements with Acupath by signing written acknowledgments agreeing that, as a condition of their employment with Acupath, they would comply with and be bound by the policies, terms and conditions of Acupath as contained in the Handbook and Guides.    Relevant portions of the Handbook and Xie and Sabini's acknowledgments and agreements to comply with the same are attached as Exhibit "C".

133.    Xie and Sabini have also violated and/or intend to continue to violate their agreements to comply with their obligations and be bound by the policies, terms and conditions of their employment contained in Acupath's Employee Handbook and Guides.

134.    Xie and Sabini's use, disclosure and misappropriation of confidential trade secret information of Acupath, their sale of products and assistance to competing medical laboratories, their improper solicitation of Acupath's clients referral sources and/or physicians with whom Acupath has or had a business relationship or potential business relationship, their numerous and repeated breach of their fiduciary obligations and their other wrongful acts, as set forth above, constitute breaches of their agreements and the provisions of the Employee Handbook and Guide with which they agreed to comply and be bound.

135.    Additionally, all agreements in New York imply a covenant of good faith and fair dealing in the course of performance.

136.    Through their conduct as set forth above, Xie and Sabini failed to exercise good faith and deal fairly in fulfilling the terms and covenants of their agreements and they breached those agreements.

33

137.    By reason of all of the above, Acupath has suffered and will continue to suffer irreparable harm and substantial monetary damages in an amount not yet determined, but which is believed to be in excess of $500,000.00.

## AS AND FOR A NINTH CAUSE OF ACTION
### (As Against All Defendants)
(Unjust Enrichment)

138.    Acupath repeats, realleges and incorporates by reference paragraphs "1" through "137" above as completely as if set forth in full herein.

139.    As set forth above, Defendants have engaged in improper, unlawful and/or unjust acts, all to the detriment of Acupath.

140.    Defendants have benefited and profited by virtue of their improper, unlawful and/or unjust acts, and Defendants have voluntarily accepted such amounts and benefits notwithstanding their improper, unlawful and unjust acts.

141.    The retention by Defendants of the benefits and profits that are due to their improper, unlawful and/or unjust acts violates fundamental principles of justice, equity and good conscience.

142.    By reason of the above, Defendants have been unjustly enriched and Plaintiff is entitled to recover as damages an amount not yet determined, but which is believed to be in excess of $500,000.00.

## AS AND FOR A TENTH CAUSE OF ACTION
### (As Against All Defendants)
(Injunctive Relief)

143.    Acupath repeats, realleges and incorporates by reference paragraphs "1" through "142" above as completely as if set forth in full herein.

144.    Upon information and belief Defendants' disclosure, and misappropriation of Confidential Trade Secrets and Information and propriety business information, improper

solicitation and misappropriation of Acupath's good will, clients, referral sources, and business relationships, their misappropriation and/or misuse of Acupath's copyrighted software, source code, computers and trade secrets, breaches of fiduciary duties, breaches of agreements and obligations, and other wrongful acts, as set forth above are continuing.

145.    Defendants have caused and are continuing to cause immediate and irreparable injury to Acupath's business, its goodwill, its business relationships, its competitive position in the marketplace, and its standing and reputation in its industry.  These kinds of injuries cannot be wholly remedied by an award of money damages.

146.    Acupath has no adequate remedy at law.

147.    By reason of the above, Acupath is entitled to preliminary and permanent injunctive relief.

## PRAYERS FOR RELIEF

WHEREFORE, Acupath respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

(a) For a preliminary and permanent injunction enjoining and restraining Defendants and their officers, agents, servants and employees, and all those in active concert or participation with them, from infringing Acupath's exclusive rights under the Copyright Act by selling, using or copying the Pathlab.net software, source code and other property of Acupath and engaging in the conduct described above;

(b) Awarding Acupath its damages, costs, expenses and reasonable attorneys' fees in accordance with 17 U.S.C. §§ 504 and 505 and other applicable law;

(c) For profits and damages in such amount as may be determined

(d) For injunctive relief enjoining Defendants, and each of them, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all

persons acting in concert or participation with each or any of them, from: (i) directly or indirectly infringing in any manner any of Acupath's copyrights (whether now in existence or hereafter created), including without limitation, the copyrighted Pathlab.net software; and/or (ii) causing, contributing to, participating in, inducing, or enabling the infringement of any of Acupath's copyrights, including without limitation, the copyrighted Pathlab.net software.

(e) For an Order enjoining Defendants from  using, selling, copying, transferring, sharing, viewing, disclosing, leasing or in any other way utilizing or transmitting Acupath's intellectual property, software, hardware, source code, copyright protected materials, trade secrets, and confidential information or any other derivative thereof;

(f) For an Order directing Defendants to preserve and return to Acupath, forthwith, all originals, copies, electronic reproductions, notes or other reproductions in any form whatsoever of any records, documents, electronic data or information of or relating to Acupath, including but not limited to, its computers, software, source code, hardware, property, client lists or information, prospect lists, referral sources, employee information, financial information, billing information, tests and/or other confidential, sensitive and proprietary property or business information belonging to or obtained from Acupath;

(g) For an Order enjoining Defendants from soliciting Acupath's current, potential and/or former clients, referral sources and/or business relationships

(h) For an Order enjoining Defendants from continuing to sell, copy or use software products and/or similar services to competitors of Acupath and persons or entities with whom Acupath has or had business relationships;

(i) For prejudgment interest according to law.

36

(j) For an Order for monetary damages in an amount to be determined at trial;

(k) For an Order for punitive damages and

(l) For an award for attorney fees, expert fees, expenses and costs; and

(m) For such other and further relief as this Court deems just and proper.

Dated: Uniondale, New York
       October 28, 2014

Respectfully submitted,


RIVKIN RADLER LLP                          PARNESS LAW FIRM, PLLC

By: _____             Hillel I. Parness (HP-1638)
                                           136 Madison Ave., 6th Floor
Brian S. Conneely (BC-5354)                New York, NY 10016
926 RXR Plaza                              Telephone:    (212) 447-5299
Uniondale, New York 11556-0926             Facsimile:    (646) 722-3410
Telephone:    (516) 357-3000               Email:        hip@hiplaw.com
Facsimile:    (516) 357-3333
Email:        brian.conneely@rivkin.com    *Attorneys for Plaintiff*
                                           *Acupath Laboratories, Inc.*

37

**Exhibit A**

# EMPLOYMENT CONTRACT
# WITH RESTRICTIVE COVENANT,
# NON-COMPETE PROVISIONS AND
# CONFIDENTIALITY AGREEMENT

## WARNING:
## THIS DOCUMENT IS A LEGAL DOCUMENT WHICH SHOULD BE READ BY YOU VERY CAREFULLY BEFORE SIGNING.

THIS DOCUMENT WILL RESTRICT YOUR RIGHTS TO BE EMPLOYED BY MEDICAL LABORATORIES AND/OR COMPETITORS OF ACUPATH LABORATORIES INC. IN THE FUTURE, WHO PERFORM LABORATORY AND/OR PATHOLOGICAL SERVICES OF THE KIND THAT ARE PRESENTLY PERFORMED BY ACUPATH LABORATORIES, INC. OR SUCH SERVICES WHICH ARE NOT PRESENTLY PERFORMED BY ACUPATH LABORATORIES, INC. BUT WHICH SERVICES MAY BE PROVIDED BY ACUPATH LABORATORIES, INC. IN THE FUTURE WHILE YOU ARE AN EMPLOYEE OF ACUPATH LABORATORIES, INC.

IN ORDER TO BECOME EMPLOYED BY ACUPATH LABORATORIES, INC., FOR THE JOB THAT YOU ARE SEEKING AND AGREEING TO ACCEPT, YOU ARE REQUIRED TO SIGN THIS DOCUMENT. HOWEVER, YOU UNDERSTAND AND AGREE THAT YOU DO NOT HAVE TO WORK FOR ACUPATH LABORATORIES, INC., AND IF YOU SIGN THIS DOCUMENT, YOU WILL BE AGREEING TO EMPLOYMENT RESTRICTIONS IN THE FUTURE.

YOU DO NOT HAVE TO SIGN THIS DOCUMENT, AND IF YOU DO SIGN THIS DOCUMENT, IT WILL BE UNDERSTOOD THAT YOU HAVE HAD AN OPPORTUNITY TO REVIEW THIS DOCUMENT AT LENGTH, AND YOU HAD THE OPPORTUNITY TO REVIEW THIS DOCUMENT WITH AN ATTORNEY.

_____ INITIALED BY EMPLOYEE                    _____ INITIALED BY ACUPATH          1

## EMPLOYMENT CONTRACT WITH RESTRICTIVE  COVENANT, NON-COMPETE PROVISIONS AND CONFIDENTIALITY AGREEMENT

made as of the _21st_ day of _May_____, 200 _8_, by and between

### ACUPATH LABORATORIES, INC.
**(hereinafter referred to as "Employer" or "Acupath"),**
having an office at 28 South Terminal Drive, Plainview, New York 11803

_Minning Xie_____ and **(the "Employee"),**
residing at

_6 John Street_
_Bethpage NY 11714_
**WITNESSETH:**

**Whereas,** Acupath is presently engaged in diagnostic testing of biopsies and tissue samples in pathology, . hematology and molecular pathology, Cancer Cytogenetics, and cytology (collectively, Acupath pathology services - GI, Urology, Dermatology, General Surgery, Podiatry, Cellular Immunology, Molecular Oncology, Cancer Cytogenetics, Microbiology, Molecular Biology, Cytopathology, Surgical Pathology) (collectively "diagnostic testing services");

**Whereas,** Employee is employed by Acupath or will become employed by Acupath in the position as a **salesperson, client service representative or sales manager, or an employee who receives commissions;**

**Whereas,** Acupath utilizes the services of Employees to market its diagnostic testing services throughout the United States;

**NOW, THEREFORE,** in consideration of the foregoing and the following Agreement and Covenants, and for other good and valuable consideration, to wit: Salary and Benefits to be paid by Acupath to Employee, the parties hereto hereby agree as follows:

_MX_ INITIALED BY EMPLOYEE                    _B_ INITIALED BY ACUPATH          2

**1.1**    **Definitions.** Throughout this Employment Contract the definitions of terms expressed in this Section shall apply.

**1.2**    "Client(s)" means any person, partnership, corporation, limited liability company,  or other entity or affiliates to which Acupath performed any services during the term of this Employment Contract and for a the three (3) year period preceding the commencement of this Employment Contract.

**1.3**    "Information" means any confidential information or confidential matter of or relating directly or indirectly to the business or businesses of Acupath including but not limited to:

(a) client list of Acupath;

(b) Clients of Acupath;

(c) prices charged by Acupath to any Client;

(d) prices paid by Clients of Acupath to Acupath;

(e) insurance reimbursements charged by or received by Acupath;

(f)  quotas, if any, required of any salesperson employed by Acupath;

(g) quotas, if any, required of any independent salesperson associated with
    Acupath;

(h) actual services provided by Acupath to any Client;

(i)  potential Clients of Acupath;

(j)  Acupath's methods of operation;

(k) Acupath's marketing strategy;

(l)  Names of Employees of Acupath;

(m)Names of Independent Representatives associated with Acupath;

_____ INITIALED BY EMPLOYEE                    _____ INITIALED BY ACUPATH        3

(n) Terms of Contracts and/or Agreements between Acupath and any Client;

(o) Acupath's training procedures;

(p) Acupath's forms;

(q) Acupath's security procedures;

(r) Originals and copies of all computer and print media of internal memoranda, reports, procedures, internal manuals, invoices, spread sheets, marketing documentation, secret or confidential techniques, methods, processes, equipment, books, notes, drawings, tapes, prints, memoranda formulae, price lists, and other related internal business matters and documents pertaining to the affairs of Acupath or its Clients;

(s) Work flow and/or backlog of work of Acupath;

(t) Acupath's plans for growth;

(u) Acupath's plans for ownership;

(v) Salaries and/or commissions paid to Employees of Acupath;

(w) Commissions of Independent Representatives, if any, of Acupath;

**2.1    Services and Compensation**.  Employee will provide services to Acupath as set forth on Exhibit "A" annexed hereto.

**2.2**    In consideration of providing said services, Employee shall receive compensation only as set forth on Exhibit "A" annexed hereto.  Employee shall receive no payment or other compensation for any service provided to Acupath other than as set forth on Exhibit "A" annexed hereto.

3.1    Employee understands, acknowledges and agrees that the Employee in the course of Employment by Acupath will acquire, learn and discover confidential

information about the operations of Acupath and/or trade secrets. Employee understands and agrees that such confidential information and/or trade secrets are and include, but are not limited to the following:

(a) client list of Acupath;

(b) Clients of Acupath;

(c) prices charged by Acupath to any Client;

(d) prices paid by Clients of Acupath to Acupath;

(e) insurance reimbursements charged by or received by Acupath;

(f) quotas, if any, required of any salesperson employed by Acupath;

(g) quotas, if any, required of any independent salesperson associated with Acupath;

(h) actual services provided by Acupath to any Client;

(i) potential Clients of Acupath;

(j) Acupath's methods of operation;

(k) Acupath's marketing strategy;

(l) Names of Employees of Acupath;

(m) Names of Independent Representatives associated with Acupath;

(n) Terms of Contracts and/or Agreements between Acupath and any Client;

(o) Acupath's training procedures;

(p) Acupath's forms;

(q) Acupath's security procedures;

(r) computer and print media of internal memoranda,

(s) reports,

(t) procedures,

(u) internal manuals,

(v) invoices,

(w) spread sheets,

(x) marketing documentation,

(y) processes, and

(z) other related internal business matters and documents pertaining to the affairs of Acupath or its Clients;

(aa)   Acupath's plans for growth;

(bb)   Acupath's plans for ownership;

(cc)   Territory assignments of Employees and/or Independent Representatives of Acupath;

(dd)   Salaries and/or commissions paid to Employees of Acupath;

(ee)   Commissions of Independent Representatives, if any, of Acupath;

(ff) Actual services provided by Acupath to Clients.


3.2    Employee understands, acknowledges and agrees that Acupath has and will continue to develop a significant reputation as a pathology and cancer genetics laboratory and Acupath is presently expending monies and may or will spend monies for research and development of its business in order to obtain new clients, increase the client base of Acupath and solicit and obtain new clients for which Employee will or may be assigned to manage or service the aforesaid new clients.

3.3    Employee understands, acknowledges and agrees that the intent and purpose of this Employment Contract is to provide Employee with an agreed upon salary and benefit package and in exchange, to prevent the Employee from taking, diverting or redirecting any business or clients of Acupath to any other laboratory or business which presently competes directly or indirectly with Acupath or which may compete, directly or indirectly, in the future with Acupath.

**3.4**    Employee understands, acknowledges and agrees that Acupath's primary source of revenue is by providing pathology services to medical offices, physicians, hospitals, and others medical professionals who refer or send specimens to Acupath for analysis.

3.5    Employee understands, acknowledges and agrees that the medical offices, physicians, hospitals and others medical professionals who refer or send specimens to Acupath for analysis provide the revenue for Acupath to operate and are vital to the survival and growth of Acupath.

**3.6**    Employee understands, acknowledges and agrees that Employee will not attempt to or actually solicit, or approach, or attempt to obtain or actually obtain, transfer, redirect or divert any of the business from clients of Acupath who were clients of Acupath on the date of the execution of this Employment Contract  through the date of termination of Employee, whether such termination is by Acupath, or the voluntarily departure of Employee from the employ of Acupath;

**3.7    EMPLOYEE UNDERSTANDS, ACKNOWLEDGES AND AGREES THAT AS A CONDITION TO BECOMING AND BEING AN EMPLOYEE OF ACUPATH, EMPLOYEE HAS READ THIS EMPLOYMENT CONTRACT, AND HAS HAD THE**

OPPORTUNITY TO REVIEW THIS EMPLOYMENT CONTRACT WITH AN ATTORNEY. EMPLOYEE AGREES TO ALL OF THE TERMS OF THIS EMPLOYMENT CONTRACT, AND THAT THIS IS AN EMPLOYMENT CONTRACT BETWEEN EMPLOYEE AND ACUPATH AND THAT ANY VIOLATION OF ANY TERM OF THIS EMPLOYMENT CONTRACT IS ACTIONABLE AGAINST THE EMPLOYEE BY ACUPATH FOR BREACH OF CONTRACT.

   3.8   EMPLOYEE UNDERSTANDS, ACKNOWLEDGES AND AGREES THAT EMPLOYEE VOLUNTARILY AGREED TO BECOME AN EMPLOYEE OF ACUPATH, AND THAT THE EMPLOYEE UNDERSTANDS AND AGREES THAT IN ORDER TO BE EMPLOYED BY ACUPATH, EMPLOYEE WILL BE RESTRICTED FROM CERTAIN TYPES OF FUTURE EMPLOYMENT FOR ONE YEAR FROM THE LAST DAY THAT EMPLOYEE IS EMPLOYED BY ACUPATH, WHETHER BY TERMINATION BY ACUPATH OR BY EMPLOYEE VOLUNTARILY LEAVING THE EMPLOYEE OF ACUPATH. EMPLOYEE UNDERSTANDS AND AGREES THAT SUCH RESTRICTION OF FUTURE EMPLOYMENT IS AN ACCEPTABLE CONDITION TO EMPLOYEE AND THE EMPLOYEE UNDERSTANDS THAT THIS RESTRICTION EXISTS, WILL BE ENFORCED BY ACUPATH AGAINST EMPLOYEE AFTER TERMINATION OF EMPLOYMENT BY EMPLOYEE, AND THAT THE EMPLOYEE WILL BE BOUND BY SUCH RESTRICTION, AND NOTWITHSTANDING THE RESTRICTION, THE EMPLOYEE STILL DESIRES TO BECOME AN EMPLOYEE OF ACUPATH KNOWING OF SUCH RESTRICTION TO FUTURE EMPLOYMENT. EMPLOYEE AGREES AND UNDERSTANDS THAT IN ADDITION TO THE FOREGOING, THAT IF EMPLOYEE IS TERMINATED OR TERMINATES

EMPLOYMENT WITH ACUPATH, THAT EMPLOYEE IS AND WILL BE PROHIBITED FROM BEING EMPLOYED BY A COMPETITOR OF ACUPATH FOR A PERIOD OF ONE (1) YEAR FROM EMPLOYEE'S LAST DAY OF WORK FOR ACUPATH AND THAT THIS ONE (1) YEAR RESTRICTION IS REASONABLE GIVEN THE CONSIDERATION PAID TO EMPLOYEE BY ACUPATH.

3.9 EMPLOYEE AGREES THAT, WITHOUT THE PRIOR WRITTEN CONSENT OF ACUPATH IN EACH INSTANCE (WHICH CONSENT MAY BE GRANTED OR WITHHELD IN ACUPATH'S SOLE DISCRETION), WHILE EMPLOYED BY ACUPATH, <u>AND FOR A TWO (2) YEAR PERIOD IMMEDIATELY FOLLOWING THE TERMINATION OF EMPLOYMENT</u> (REGARDLESS OF WHETHER SUCH TERMINATION WAS INITIATED BY ACUPATH OR EMPLOYEE, AND WHETHER "FOR CAUSE" OR NOT "FOR CAUSE", DIRECTLY OR INDIRECTLY, WHETHER ON EMPLOYEE'S OWN BEHALF OR ON BEHALF OF ANY PERSON, FIRM, CORPORATION, LIMITED LIABILITY COMPANY OR OTHER FACILITY OR ENTITY, AND WHETHER AS PRINCIPAL, EMPLOYEE, CONSULTANT, INDEPENDENT EMPLOYEE OR OTHERWISE:

> (A) EMPLOYEE WILL NOT, DIRECTLY OR INDIRECTLY, ACTUALLY SOLICIT ANY CLIENTS OF ACUPATH WHO WERE CLIENTS OF ACUPATH ON OR AFTER THE DATE OF THE EXECUTION OF THIS EMPLOYMENT CONTRACT;

(B) EMPLOYEE WILL NOT, DIRECTLY OR INDIRECTLY, ATTEMPT TO SOLICIT ANY CLIENTS OF ACUPATH WHO WERE CLIENTS OF ACUPATH ON OR AFTER THE DATE OF THE EXECUTION OF THIS EMPLOYMENT CONTRACT;

(C) EMPLOYEE WILL NOT, DIRECTLY OR INDIRECTLY, APPROACH ANY CLIENTS OF ACUPATH WHO WERE CLIENTS OF ACUPATH ON OR AFTER THE DATE OF THE EXECUTION OF THIS EMPLOYMENT CONTRACT BY TELEPHONE, EMAIL, MAIL, COURIER SERVICE OR BY WRITTEN OR ORAL COMMUNICATIONS;

(D) EMPLOYEE WILL NOT, DIVERT, REDIRECT OR TRANSFER ANY BUSINESS FROM ACUPATH TO ANY OTHER LABORATORY OR BUSINESS;

EMPLOYEE EXPRESSLY UNDERSTANDS AND AGREES THAT THIS IS AN AT-WILL CONTRACT AND EMPLOYER MAY TERMINATE THIS EMPLOYMENT CONTRACT AT ANY TIME FOR ANY REASON.

_____ INITIALED BY EMPLOYEE                    _____ INITIALED BY ACUPATH        10

### 4.0    Territorial Restriction of the Employment Contract.

4.1    The Employee understands and agrees that Employee may not work at all, including but not limited to as an Employee, Consultant or Independent Representative for any medical laboratory that is a competitor or potential competitor, physician, hospital or medical center with a sales force for laboratory services, medical professionals who process or analyze medical specimens that are the same type of specimens that Acupath processes or analyzes for a period of one (1) year after the last day that Employee was employed by Acupath in a radius of thirty (30) miles from the Employee's principal office while employed by Acupath.

4.2    Employee agrees that Employee may be severely restricted in the type of employment that Employee may engage in for one year after Employees employment ceases with Acupath.

### 5.0    Confidential Information:

5.1    Employee hereby agrees to hold in strict confidence and not to disclose to any third party any of the Information as defined above, and valuable, confidential, and proprietary business, financial, technical, economic, sales, and/or other types of proprietary business information relating to Acupath (including all trade secrets), in whatever form, whether oral, written, or electronic (collectively, the "Confidential Information"), to which Employee has, or is given (or has had or been given), access as a result of Employee's employment by Acupath.  It is agreed that the Information is confidential and proprietary to Acupath because such Information encompasses information that was acquired by Employee by virtue of Employee's employment with Acupath, technical know-how, trade secrets, or technical, financial, organizational,

sales, or other valuable aspects of Acupath's business and trade, including, without limitation, technologies, products, processes, plans, clients, personnel, operations, and business activities.

5.2    If the Employee actually reveals, or threatens to reveal Information that is confidential to Acupath, then Acupath shall be entitled to an injunction, including, but not limited to, a temporary restraining order, a preliminary injunction and/or a permanent injunction restraining the Employee from disclosing or threatening to disclose Acupath's confidential information or Information.    The right to secure an injunction is not exclusive, and Acupath may pursue any other remedies it has against the Employee for a breach or threatened breach of this Employment Contract, including the recovery of damages from the Employee.

**5.3    Items to be held confidential by Employee and never disclosed unless required to do so by law, include, but are not limited to the following:**

(a) **client list of Acupath;**

(b) **Clients of Acupath;**

(c) **prices charged by Acupath to any Client;**

(d) **prices paid by Clients of Acupath to Acupath;**

(e) **insurance reimbursements charged by or received by Acupath;**

(f) **quotas, if any, required of any salesperson employed by Acupath;**

(g) **quotas, if any, required of any independent salesperson associated with Acupath;**

(h) **actual services provided by Acupath to any Client;**

(i) **potential Clients of Acupath;**

(j)  Acupath's methods of operation;

(k) Acupath's marketing strategy;

(l)  Names of Employees of Acupath;

(m)     Names of Independent Representatives associated with Acupath;

(n) Terms  of  Contracts  and/or  Agreements  between  Acupath  and  any  Client;

(o) Acupath's training procedures;

(p) Acupath's forms;

(q) Acupath's security procedures;

(r)  computer and print media of internal memoranda,

(s) reports,

(t)  procedures,

(u) internal manuals,

(v) invoices,

(w) spread sheets,

(x) marketing documentation,

(y) processes, and

(z) other related internal business matters and documents pertaining to the affairs of Acupath or its Clients;

(aa)   Acupath's plans for growth;

(bb)   Acupath's plans for ownership;

(cc)   Territory  assignments  of  Employees  and/or  Independent  Representatives of Acupath;

(dd)    **Salaries and/or commissions paid to Employees of Acupath;**

(ee)    **Commissions of Independent Representatives, if any, of Acupath;**
**Actual services provided by Acupath to Clients.**

5.4    This restriction with regard to items that are confidential and which are set forth in Paragraph 5.1, 5.2 and 5.3 of this Employment Agreement, shall not apply to any Confidential Information that (a) becomes known generally to the public through no fault of the Employee; (b) is required by applicable law, legal process, or any order or mandate of a court or other governmental authority to be disclosed; or (c) is reasonably believed by Employee, based upon the advice of legal counsel, to be required to be disclosed in defense of a lawsuit or other legal or administrative action brought against Employee; provided, that in the case of clauses (b) or (c), Employee shall give Acupath immediate written notice when such demand for disclosure of confidential information regarding Acupath is known by Employee and prior to any disclosure of such confidential information together with the reasons and circumstances surrounding such demanded disclosure by Employee, in order to permit Acupath to seek a protective order or other appropriate request for confidential treatment of the applicable Confidential Information.

### 6.0    Return of Company Property.

6.1    Within three days of termination of Employee's employment by Acupath for any reason whatsoever, Employee or Employee's personal representative shall return to Acupath (a) all Confidential Information; (b) all other records, business plans, financial statements, manuals, memoranda, lists, correspondence, reports, records, charts, advertising materials, laptop with all software intact, cell phone, fax machine,

_____ INITIALED BY EMPLOYEE                    _____ INITIALED BY ACUPATH      14

copy machine, GPS system, navigation system, DSL / Cable disconnection and/or service and other data or property delivered to or compiled by Employee by or on behalf of Acupath, its representatives, vendors, or customers or clients that pertain to the business of Acupath, whether in paper, electronic, or other form; and (c) all keys, credit cards, vehicles, and other property of Acupath. Employee shall not retain or cause to be retained any copies of the foregoing and shall permit no other person or entity to view any of the Information or Confidential Information at any time. Employee hereby agrees that all of the foregoing shall be and remain the property of Acupath, as the case may be, and be subject at all times to their discretion and control.

### 7.0    No Prior Agreements.

7.1    Employee hereby represents and warrants to Acupath that the execution of this Employment Contract by Employee, the employment by Acupath, and the performance of Employee's duties hereunder will not violate or be a breach of any Employment Contract or Agreement of any kind with a former employer, client, or any other Person. Further, Employee agrees to indemnify and hold harmless Acupath and its officers, directors, stockholders, and representatives for any claim, including, but not limited to, reasonable attorneys' fees and expenses of investigation, of any such third party that such third party may now have or may hereafter come to have against Acupath or such other persons, based upon or arising out of any non-competition agreement, invention, secrecy, or other agreement between Employee and such third party that was in existence as of the date of this Employment Contract. To the extent that Employee had any oral or written employment agreement or contract or understanding with Acupath, this Employment Contract shall automatically supersede

_____ INITIALED BY EMPLOYEE                    _____ INITIALED BY ACUPATH        15

any and all such agreements, contracts or understandings, and upon execution of this Employment Contract by Employee and Acupath, such prior agreement or contract or understanding automatically shall be deemed to have been terminated and shall be null and void.

**8.0     Assignment; Binding Effect.**

8.1     Employee understands that Employee has been selected for employment by Acupath on the basis of Employee's personal qualifications, experience, and skills. Employee agrees, therefore, that Employee may not assign all or any portion of Employee's performance under this Employment Contract.  This Employment Contract may be assigned or transferred by Acupath without the prior written consent of Employee if Acupath is acquired by or merged into any other entity.  This Employment Contract shall be binding upon, inure to the benefit of, and be enforceable by the parties hereto and their respective heirs, legal representatives, successors, and assigns.

**9.0     Complete Agreement; Waiver; Amendment.**

9.1     This Employment Contract is not a promise of future employment. Employee has no oral representations, understandings, or agreements with Acupath or any of its officers, directors, stockholders, or representatives covering the same subject matter as this Employment Contract.  This Employment Contract is the final, complete, and exclusive statement and expression of the Employment Contract and terms of employment between Acupath and Employee with respect to the subject matter hereof and thereof, and cannot be varied, contradicted, or supplemented by evidence of any prior or contemporaneous oral or written documents.  This Employment Contract may not be modified except by a further writing signed by a duly authorized officer of

_____ INITIALED BY EMPLOYEE                    _____ INITIALED BY ACUPATH        16

Acupath and Employee, and no term of this Employment Contract may be waived except by a writing signed by the party waiving the benefit of such term.

### 10.0   Notice.

10.1   Whenever any notice is required hereunder, it shall be given in writing addressed as follows:

To Acupath:      ACUPATH LABORATORIES, INC.
                 28 South Terminal Drive,
                 Plainview, New York 11803
                 Fax number 516-908-4371

with a copy to:     Gary Rosen, Esq.
                 Gary Rosen Law Firm, P.A.
                 1010 Northern Boulevard, Suite 308
                 Great Neck, New York 11021

To Employee:     as set forth on page # 2 of this Agreement

Notice shall be deemed given and effective three days after the deposit in the U.S. mail of a writing addressed as above and sent first class mail, certified return receipt requested, or, if sent by express delivery, overnight mail, hand delivery, or facsimile, when delivered.  Either party may change the address for notice by notice to the other party of such change in accordance with this Section 10.

### 11.0   Severability; Headings; Counterparts.

11.1   If any portion of this Employment Contract is held invalid or inoperative, the other portions of this Employment Contract shall be deemed valid and operative and, so far as is reasonable and possible, effect shall be given to the intent manifested by the portion held invalid or inoperative.  The paragraph headings herein are for reference purposes only and are not intended in any way to describe, interpret, define

_____ INITIALED BY EMPLOYEE          _____ INITIALED BY ACUPATH   **17**

or limit the extent or intent of the Contract or of any part hereof.  This Employment Contract may be executed in one or more counterparts, all of which taken together will constitute one and the same Contract.

**12.0   Equitable Remedy.**

12.1   Because of the difficulty of measuring economic losses to Acupath as a result of a breach of the restrictive covenants, non-compete clauses or confidentiality clauses set forth in this Employment Contract, and because of the immediate and irreparable damage that would be caused to Acupath for which monetary damages would not be a sufficient remedy, Employee agrees that in addition to all other remedies that may be available to Acupath at law or in equity, Acupath shall be entitled to specific performance and any injunctive or other equitable relief as a remedy for any breach or threatened breach of the aforementioned restrictive covenants, non-compete clauses and/or confidentiality clauses..

**13.0   Equitable Relief; Jurisdiction and Venue.**

13.1   Upon due consideration of any effects created hereby, Employee hereby irrevocably submits to the jurisdiction and venue of a court of competent civil jurisdiction sitting in Nassau County, New York or the United States District Court for the Eastern District of New York, in any action at law or in equity or any proceeding brought by Acupath or Employee arising out of, or relating to this Contract.  Employee hereby irrevocably agrees that any action or proceeding may, at Acupath's option, be heard and determined in such court.  Employee agrees that a final order or judgment in any action or proceeding shall, to the extent permitted by applicable law, be conclusive and may be

enforced in other jurisdictions by suit on the order or judgment, or in any other manner provided by applicable law related to the enforcement of judgments.

**14.0   Governing Law.**

14.1   This Employment Contract shall in all respects be construed according to the laws of the State of New York without regard to its conflict of laws principles.

**IN WITNESS WHEREOF,** the parties hereto have caused this Contract to be duly executed as of the date first written above.

**EMPLOYEE**

_____

Print Name:_____

**Acupath Laboratories, Inc.**

By:_____

Name:_____

Title:_____

State of New York      ) ss.:
County of _Nassau,_   )

On the 21st day of _May_ in the year 2008 before me, the undersigned, a Notary Public in and for said State, personally appeared _Minqing Xie_ **(EMPLOYEE)**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Marie Varriale_
Notary Public

MARIE VARRIALE
Notary Public, State of New York
No. 01VA6143807
Qualified in Suffolk County
Commission Expires: April 17, 2010

State of New York      ) ss.:
County of _Nassau,_   )

On the 21st day of _May_ in the year 2008 before me, the undersigned, a Notary Public in and for said State, personally appeared _Barbara Turista_ **(OFFICER OF ACUPATH)**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Marie Varriale_
Notary Public

MARIE VARRIALE
Notary Public, State of New York
No. 01VA6143807
Qualified in Suffolk County
Commission Expires: April 17, 2010

_____ INITIALED BY EMPLOYEE           INITIALED BY ACUPATH          20

**Exhibit B**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**TX 7-910-395**

**Effective date of
registration:**

September 23, 2014

## Title
Title of Work: Pathlab.net

## Completion/Publication
Year of Completion: 2014

Date of 1st Publication: September 19, 2014        Nation of 1st Publication: United States

## Author
- Author: Acupath Laboratories, Inc.

Author Created: computer program

Work made for hire: Yes

Citizen of: United States

## Copyright claimant
Copyright Claimant: Acupath Laboratories, Inc.

28 S. Terminal Drive, Plainview, NY, 11803, United States.

## Limitation of copyright claim
Material excluded from this claim: computer program

New material included in claim: computer program

## Rights and Permissions
Organization Name: Acupath Laboratories, Inc.

Name: Barbara Jurysta

Email: bjurysta@acupath.com                       Telephone: 516-775-8103

Address: 28 S. Terminal Drive

Plainview, NY 11803 United States

## Certification

**Name:**   Hillel J. Parness
**Date:**   September 23, 2014



**Registration #:** TX0007910395
**Service Request #:** 1-1756561341



Parness Law Firm, PLLC
Hillel I Parness
136 Madison Ave., 6th Floor
New York, NY 10016 United States

**Exhibit C**



**ACUPATH™**
LABORATORIES, INC.

# EMPLOYEE HANDBOOK



## Table of Contents

Section 1: Employee Rights and Responsibilities.................................................................... 6

Welcome To Our Team!.......................................................................................................... 7~~6~~

Our Philosophy and Objectives.............................................................................................. 9~~8~~

Our Commitment to Fair Employment Practices...................................................................... 9~~8~~

Your Commitment.................................................................................................................... 9~~8~~

Expectations – What We Expect From You............................................................................. 9~~8~~

Your Department Head............................................................................................................ 10~~9~~

Departmental Staff Meetings................................................................................................... 10~~9~~

Business Ethics and Conduct.................................................................................................. 10~~9~~

Code of Conduct..................................................................................................................... 11~~10~~

Anti-Kickback, Fraud, Waste and Abuse Policy..................................................................... 12~~11~~

Client's and Patient's Confidentiality or Patient's Confidentiality......................................... 13~~12~~

Patient / Client Rights............................................................................................................. 14~~12~~

Relations with Patients and Clients........................................................................................ 14~~13~~

Routine Waiver of Co-Pays, Co-Insurance, and Deductibles................................................. 15~~14~~

Licenses.................................................................................................................................. 16~~15~~

Nature of Employment and Non-Compete.............................................................................. 16~~15~~

Disability Accommodation...................................................................................................... 18~~17~~

Conflicts of Interest................................................................................................................ 20~~18~~

Non-Disclosure and Confidentiality of Information................................................................. 20~~19~~

Drug and Alcohol Use............................................................................................................. 26~~25~~

Section 2: Business Operations and Payroll Information........................................................ 29~~27~~



Employment Categories ............................................................................................... 29~~27~~

Personnel Files and Personal Information ................................................................... 30~~28~~

References and Personal Information ......................................................................... 30~~28~~

Job Postings and Promotions ........................................................... ***Error! Bookmark not defined.***

Timekeeping ................................................................................................................ 31~~29~~

Paydays ....................................................................................................................... 32~~30~~

Pay Policy & Pay Deductions ..................................................................................... 33~~31~~

Work Schedules .......................................................................................................... 33~~31~~

Break and Smoking Policy .......................................................................................... 34~~32~~

Attendance and Punctuality ........................................................................................ 34~~32~~

Unauthorized Absence (No Call/No Show) ................................................................. 35~~33~~

Overtime ...................................................................................................................... 35~~33~~

Section 3: Benefits ..................................................................................................... 37~~35~~

Employee Benefits ...................................................................................................... 37~~35~~

Health Insurance ........................................................................................................ 38~~36~~

Disability Leave ........................................................................................................... 38~~36~~

Conference Leave ....................................................................................................... 38~~36~~

Professional Liability Insurance .................................................................................. 39~~37~~

Benefits Continuation (COBRA) ................................................................................. 39~~37~~

Medical and Genetic Information and the Right to Privacy .......................................... 40~~38~~

Section 4:  Leave and Approved Absences .............................................................. 42~~39~~

Vacation Benefits ........................................................................................................ 42~~39~~

Sick and Personal Leave ............................................................................................ 43~~40~~



**ACUPATH**
LABORATORIES, INC.

Holidays..................................................................................................4441

Bereavement Leave.................................................................................4441

Jury Duty Leave.......................................................................................4542

Military Leave...........................................................................................4542

Family/Medical Leave..............................................................................4744

Section 5: Technology...............................................................................5148

Phones, Faxes and Mail Systems............................................................5148

Cellular Telephone Use............................................................................5148

Employee Privacy, Electronic Mail and Voice Mail..................................5451

Internet Policy..........................................................................................5552

Disclaimer of Liability for Use of Internet.................................................5552

Duty not to Waste Computer Resources...................................................5552

No Expectation of Privacy........................................................................5653

Monitoring Computer Usage.....................................................................5653

Prohibited Activities..................................................................................5653

Illegal Copying.........................................................................................5753

Accessing the Internet.............................................................................5754

Virus detection.........................................................................................5754

Social Media Policy..................................................................................5754

Cameras and Other Recording Devices in the Workplace.......................5956

Section 6: Workplace Information..............................................................6157

Performance Appraisals...........................................................................6157

Work Performance....................................................................................6157



Let's Talk About It.................................................................................................... 62~~58~~

Relations with Colleagues ...................................................................................... 63~~59~~

Return of Property .................................................................................................. 63~~59~~

Business & Travel Expenses.................................................................................. 64~~60~~

Section 7: Professional Conduct ................................................................................ 65~~61~~

Professional Courtesy ........................................................................................... 65~~61~~

Workplace Decor.................................................................................................... 66~~62~~

Eating On Premises ............................................................................................... 66~~62~~

Personal Appearance............................................................................................. 66~~62~~

Solicitation, Distribution and Posting..................................................................... 68~~64~~

Bulletin Boards ...................................................................................................... 68~~64~~

Outside Employment and Interests........................................................................ 68~~64~~

Section 8: Safety ......................................................................................................... 69~~65~~

Violence in the Workplace...................................................................................... 69~~65~~

Building Security .................................................................................................... 70~~66~~

Emergency Closings............................................................................................... 70~~66~~

Evacuation.............................................................................................................. 70~~66~~

Accident Reporting................................................................................................. 71~~67~~

Safety, Injuries and Reporting Accidents .............................................................. 71~~67~~

Vehicle Safety........................................................................................................ 71~~67~~

Workplace Monitoring and Inspections.................................................................. 72~~68~~

Section 9: Acknowledgement Form ............................................................................ 73~~69~~

EMPLOYEE RECEIPT ACKNOWLEDGEMENT FORM............................................ 73~~69~~



constitutes a violation of the federal False Claims Act. The New York State False Claims Act is patterned upon the federal False Claims Act and is enforced by the Office of the New York State Attorney General.

Please refer to the "Routine Waiver of Co-Pays, Co-Insurance, and Deductibles" policy in its entirety for more details.

## Licenses

If an employee is required to have a license to perform the functions of his/her employment, the employee is personally responsible for obtaining the license, maintaining the license, and providing Acupath with a copy of the license. If you hold a license which is required to perform you functions at Acupath is revoked, expired, suspended or terminated, you must immediately cease all work for Acupath and you must immediately notify your supervisor as well as the Chief Executive Officer and human resources department of Acupath.

Licensing requirements are strictly enforced.  Falsification or failure to notify the Chief Executive Officer your direct supervisor of any change in the status of your license is grounds for immediate dismissal.

## Nature of Employment and Non-Compete

Employment with Acupath is voluntarily entered into, and the employee is free to resign at will at any time, with or without cause. Similarly, Acupath may terminate the employment relationship at will at any time, with or without notice or cause, as long as there is no violation of applicable Federal, state, or local laws.

Policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between Acupath and any of its employees. The provisions of the handbook have been developed at the discretion of management and, except for its policy of employment-at-will, may be amended or cancelled at any time, at Acupath's sole discretion.

These provisions supersede all existing personnel policies only known as Acupath Employee Handbook and may not be added to or amended without the express written approval of the Chief Executive Officer of Acupath.

In consideration of this Agreement and the opportunity for work for Acupath, and other good and valuable consideration, personnel may not, without the prior written consent of



the Chief Executive Officer in each instance, which consent may be granted, withheld or subsequently retracted by Acupath in the Acupath's sole discretion, (which consent shall be evidenced only by the signature of both of the Employer's Chief Executive Officer, and Laboratory Director in a writing), personnel shall not during the term of employment, and for the twelve (12) month period immediately following the termination of the term of employment regardless of whether such termination was initiated by Acuapth or the Employee, and whether or not for "cause" as hereinafter defined, directly or indirectly, whether on his or her own behalf or on behalf of any person, firm, corporation or other facility or entity, and whether as principal, employee, consultant, independent contractor or otherwise:

(a) solicit or send notices or announcements to any referring sources of Acupath except on behalf of Employer;

(b) conduct any advertising or send any mailings which are may be read or received by any of the referring sources of Acupath except on behalf of Acupath;

(c) become employed by any other laboratory and/or compete with any competitor of Acupath in any manner;

(d) solicit or hire to solicit for employment or employ any employee or independent contractor of Acupath or induce or attempt to induce any employee of Acupath to terminate his or her employment or other relationship with Acupath; or

(e) solicit Acupath's referring physicians or clients to refer specimens to the Employee or to the lab for which Employee may work or to another laboratory or otherwise interfere with the relationship of Acupath with its referring physicians, medical centers, hospitals, or laboratories. The Employee further agrees that the Employee shall not, at any time, except as authorized by Acupath and on behalf of Acupath, use any of Names or use any other names or service marks which might be confused with any of the Names or service marks of Acupath.

In the event the Employee breaches or threatens or attempts to breach any provision of the aforesaid restriction against competing with Acupath, in addition to Acupath's other rights and remedies, the Employee shall forfeit any right to any compensation or benefits to which the Employee might otherwise have been entitled. As an Acupath Employee, you understand and agree that Acupath's remedy at law for any such breach will be inadequate and that Acupath shall be entitled to seek and obtain injunctive relief restraining the Employee from breaching or continuing to breach or violating or continuing to violate any provision set forth in this Employee Handbook. The right by Acupath to secure an injunction is not exclusive, and Acupath may pursue any



other remedies it has against the Employee for a breach or threatened breach of the terms and conditions of this Employee Handbook, and Acupath shall be entitled to seek the recovery of damages from Employee as well as costs and expenses incurred by Acupath.

For all purposes, "solicit" shall mean, but not be limited to, seeking patronage or business for Employee or for any party other than Acupath, by telephone, courier service (including overnight mail services), U.S. mail, email, internet, newspaper, advertising, or in person, or through an agent (paid or unpaid).

## Equal Employment Opportunity

We use the criteria of merit, qualifications, and abilities to determine hiring decisions and promotions within the organization. Acupath does not discriminate in employment opportunities or practices on the basis of sex, race, color, national origin, religion, sexual orientation, age, marital status, disability, pregnancy, genetic predisposition or carrier status, veteran's status, or any other segmenting factor protected by law.

Acupath will consider all reasonable accommodations for qualified individuals with known disabilities unless doing so would result in an undue hardship to our organization. This policy applies to all aspects of our employment relationships, including staffing, job requirements, salary, corrective actions, termination, as well as access to benefits and training.

Any employees with questions or concerns about any type of discrimination in the workplace are encouraged to bring these issues to the attention of their immediate supervisor, the human resources department or the Chief Executive Officer. Employees can be confident that if they do report any type of activity that they feel may be contrary to this policy there will be no retaliation from our organization. Anyone found to be engaging in any type of unlawful discrimination will be subject to disciplinary action, up to and including termination of employment.

## Disability Accommodation

Acupath is committed to complying fully with the Americans with Disabilities Act and its amendments (ADAAA) and ensuring equal opportunity in employment for qualified persons with disabilities. All employment practices and activities are conducted on a non-discriminatory basis.

Acupath is also committed to not discriminating against any qualified employees or applicants because they are related to or associated with a person with a disability.



## Conflicts of Interest

It is Acupath's policy that employees avoid any conflict between their personal interests and the interests of the company in dealing with clients, suppliers, vendors and all other organizations or individuals either doing or seeking to do business with Acupath.

A conflict of interest refers to a transaction that interferes with the objectivity of an employee's position at our company. Business that is conducted should not result in personal gains for any of our employees or an outside company or person with whom an employee is dealing. These gains include any type of product bonuses, special fringe benefits, unusual price breaks, and bribes.

Employees who feel they have influence in or control over a business activity in which their objectivity is compromised should speak with their supervisor. The relationship that an employee has with a vendor, client or co-worker can be clouded based on personal interactions, having nothing to do with legal or family relationships. Employees who have influence at any level on activities involving purchases, contracts, or other work product, should speak with their supervisor or human resources department regarding the existence of any actual or potential conflict of interest so that safeguards can be established to protect all parties. Failure to adhere to this policy, including failure to disclose any conflict or seek authorization for an exception, may result in disciplinary action, up to and including termination of employment.

## Non-Disclosure and Confidentiality of Information

In the normal course of business, employees may be given or may acquire information about the business of Acupath, its affiliates, its clients, and its employees that is not available to the general public. This information is confidential and is considered the exclusive property of Acupath. The term "confidential information" shall mean and include, but is not limited to, financial data, business plans and strategies, client lists, computer software programs and employee information, business operations and methods, financial performance, contractual relationships, business partners and relationships, names or the identity of clients and/or customers of Acupath, marketing modules and/or strategies, lists with information related to existing or prospective clients and/or customers, any and all material, data, discoveries, ideas, improvements, information, inventions, formulae, patterns, compilations, programs, devices, methods, techniques, processes, know how, plans (marketing, business, strategic, technical or otherwise), arrangements, pricing and/or other information of, or relating to Acupath (as well as its clients, customers, and/or vendors) that is confidential, proprietary, and/or a trade secret, (i) by its nature, (ii) based on how it is treated or designated by Acupath,



(iii) based on the significance of its existing or potential commercial value or business utility; (iv) such that its appropriation, use or disclosure would have a material adverse effect on the business or planned business of Acupath, or (v) as a matter of law.

All employees are responsible for respecting and maintaining the confidential nature of such information.

There is no requirement that any Confidential Information be reduced to a writing to meet the definition of "Confidential Information" as set forth above.  Work Product (as defined below) is included in the definition of Confidential Information.  To the extent Confidential Information is reduced to a writing, there is no requirement that any documents, information, materials or media be marked "confidential" or bear any similar marking in order to fall within the definition of "Confidential Information."

"Work Product " means all patents and patent applications, all inventions, innovations, improvements, developments, methods, designs, analyses, drawings, reports, creative works, discoveries, software, computer programs, modifications, enhancements, know-how, formulations, concepts and ideas, all similar or related information (in each case whether patentable or not), all copyrights and copyrightable works, all trade secrets, confidential information, and all other intellectual property and intellectual property rights, that are written, conceived, reduced to practice, developed, and/or made by "Employee", either alone or with others in the course of "Employee's employment with or services to Company (including employment or services prior to the Effective Date).

Due to the complex and competitive nature of the business of Acupath and its sophisticated and proprietary financial billing, computer systems, computer software, business plan, patent(s), methods of operations and specimen examination matters, the confidentiality of information concerning Acupath is of critical importance. Employees will, due to his or her duties and position of trust under as an employee of Acupath, as the special, unique and extraordinary nature of his or her services, the Employee will have access to and obtain Information, as defined below, concerning the Employer which is confidential and proprietary to Acupath, including but not limited to information concerning specimens, computer software and programs, referring sources, company ownership and corporate hierarchy, business and financial methods, financial arrangements with the Employee, this Employee Handbook, systems, plans, policies and directions (collectively, the "Information"). The Employee agrees that he or she will not during, or at any time after the term of her employment, directly or indirectly, disclose or use any Information for any reason whatsoever, without the prior written consent of the Employer in each instance except on behalf of Acupath. The Employee consents and agrees that if he or she violates any of the provisions of this Employee Handbook, Acupath would sustain irreparable harm and, therefore, in addition to any



other remedies which Acupath may have under in accordance with this Employee Handbook, any employment agreement with Employee or otherwise, Acupath shall be entitled to obtain injunctive relief restraining the Employee or any third party from committing or continuing any such violation (or participating therein) of the terms and conditions of this Employee Handbook or any employment agreement, and the Employee shall not object to any such application. The right to secure an injunction is not exclusive, and Acupath may pursue any other remedies it has against the employee for a breach or threatened breach of this condition, including the recovery of damages from the Employee.

The duty to protect the confidence of Acupath, its clients, and its employees includes avoiding intentional disclosures, as well as taking care to avoid accidental disclosures. All employees must exercise extreme care in how and where they discuss, document, and store the confidential information that relates to business activities of Acupath, its clients, and its employees.

Confidential information of Acupath, its clients or employees may only be disclosed, whether orally or in writing, within Acupath to those who need to know the information to perform their job functions. Confidential information is not to be disclosed or used outside of Acupath except for legitimate and legal reasons related to Acupath's business interests or as required by law.

Upon separation of employment for any reason, all confidential information must remain in the possession of Acupath, and all employees are to return to Acupath all originals and copies of such confidential information.

If an employee has any questions about whether information is confidential, he or she should contact his or her supervisor, human resources department or the Chief Executive Officer. This policy is not intended to supersede or modify any written agreements employees have entered into with Acupath to protect company property or information.

The following are the only exceptions to what is considered as "Confidential Information" which must be shown by the Employee by clear and convincing evidence prior to use of the Confidential Information: material, data, and/or information: (i) that Acupath has voluntarily and fully placed in the public domain with the intent for such information to remain public and be readily and publicly accessible; (ii) that has been lawfully and independently developed and publicly disclosed by third parties without any direct or indirect access to any Confidential Information as evidenced by prior written records; (iii) that constitutes the general non-specialized knowledge and skills gained by "Employee" during the period of employment of Employee); (iv) that otherwise enters



the public domain through lawful means; or (v) that "Employee" provides to third parties regarding "Employee's obligations under in accordance with the terms and conditions of this Employee Handbook; provided, however, that the unauthorized appropriation, use, or disclosure of Confidential Information by "Employee", directly or indirectly, shall not affect the protection and relief afforded by the terms of this Employee Handbook, which terms and conditions Employee has read, understood and agreed to in consideration of employment or continued employment of Employee by Acupath. Any Confidential Information that includes a combination of features or aspects shall not be deemed to be within any of the foregoing exceptions merely because individual features or aspects fall within any one or more of such exceptions, but only if the combination itself falls within any of the exceptions.

Other than the foregoing, if properly shown by clear and convincing evidence, nothing which meets the definition of Confidential Information may be disclosed by Employee.

Both during and after the term of employment by Acupath, "Employee" shall not, in any manner, directly or indirectly: (i) appropriate, download, print, copy, image, fax, e-mail, remove, use, disclose, divulge, and/or communicate any Confidential Information, to or for the benefit of any Person (as defined below), including (without limitation) originals or copies of any Confidential Information, in any media or format, except for Acupath's benefit within the course and scope of Employee's employment, or with the prior written consent of the Chief Executive Officer of Acupath; or (ii) take or encourage any action that would circumvent, interfere with, or otherwise diminish the value or benefit of any Confidential Information to Acupath. All Confidential Information is the exclusive property of Acupath, the appropriation, use and/or disclosure of which is governed and restricted by the terms of and the acceptance by the Employee of this Employee Handbook.

Return and Review. All Confidential Information, and all other information and property affecting or relating to the business of Acupath (including without limitation files, documents, materials, records, notebooks, customer lists, business proposals, contracts, agreements and other repositories containing information concerning Acupath or the business of Acupath), within the Employee's possession, custody or control, regardless of form or format, shall remain, at all times, the property of Acupath. At any time that Acupath may request, during or after the term of employment of Employee by Acupath, Employee shall deliver to Acupath, all originals and copies of Confidential Information, and all other information and property affecting or relating to the business of Acupath, within Employee's possession, custody or control, regardless of form or format; provided that, upon the Termination Date (as defined below), Employee shall effect such delivery without the necessity of a prior Company request. Both during and after the Employment Period, Acupath shall have the right of



reasonable access to review, inspect, copy, and/or confiscate any Confidential Information, and any other information and property affecting or relating to the business of Acupath, within Employee's possession, custody or control.

Response to Third Party Requests. Upon receipt of any formal or informal request, by legal process or otherwise, seeking Employee's direct or indirect disclosure or production of any Confidential Information to any Person, Employee shall promptly and timely notify Acupath and provide a description and, if applicable, hand deliver a copy of such request to Acupath. Employee irrevocably nominates and appoints Acupath to act in the Employee's name, place and stead to perform any act that Employee might perform to defend and protect against any disclosure or production of Confidential Information.

## Unlawful Harassment and Discrimination

Acupath is committed to providing a work environment that is free from all forms of discrimination and conduct that can be considered harassing, coercive, or disruptive, including sexual harassment. Actions, words, jokes, or comments based on an individual's sex, race, color, national origin, age, religion, disability, sexual orientation, genetic information, or any other legally protected characteristic will not be tolerated. Acupath provides ongoing anti-harassment training to ensure all employees the opportunity to work in an environment free of sexual and other unlawful harassment. Acupath specifically prohibits any form of harassment and/or discrimination, whether in person or via electronic media, by or toward any person doing business with or for Acupath or on Acupath's premises, including employees, contractors, suppliers, or clients.

Sexual harassment is defined as unwelcome sexual advances (either verbal or physical), requests for sexual favors, and visual, verbal, or physical conduct of a sexual nature when: (1) submission to such conduct is made either explicitly or implicitly a term or condition of employment; (2) submission or rejection of the conduct is used as a basis for making employment decisions; or, (3) the conduct has the purpose or effect of interfering with work performance or creating an intimidating, hostile, or offensive work environment. This definition includes many forms of offensive behavior and also includes gender-based harassment against a person of the same sex as the alleged harasser. The following is a partial list of harassment examples:

- Making unwanted sexual advances.
- Offering employment benefits in exchange for sexual favors.
- Making or threatening reprisals after a negative response to sexual advances.



to use their Acupath issued cellular telephone when operating a motor vehicle. Violation of this policy will lead to disciplinary action, including termination.

Sending or receiving text messages from or to your cellular telephone or blackberry type device while you are driving a vehicle or walking is extremely dangerous. You must not look at your cellular phone, i-phone type device or blackberry type device ("hand held device") unless you are standing still, whether in a vehicle or on foot. If you are in a vehicle, you must be in a stopped position with the motor turned off to use your cellular telephone or hand held device. The dangers of using a cellular telephone or a hand held device are numerous; such has having an automobile accident, hitting a pedestrian, being hit by a car while crossing a street and looking down at your cellular telephone or hand held device. Acupath does not want you to become injured and Acupath does not want you to cause injuries to others. You must strictly comply with not using cellular telephones or hand held devices in what could be a dangerous or hazardous manner. Failure to obey this policy could result in your termination.

## Computers and Other Resources

Computers are an expensive and valuable resource and are to be used only for Acupath's business. Any use of computer resources other than for official business may be considered misconduct, and the employee engaging in such activity will be subject to discipline, which may include termination.

Computer terminal passwords are confidential and must be safeguarded at all times. It is the system user's responsibility to ensure that passwords are never left unprotected or unsecured. An unprotected password constitutes a security violation. In case you suspect that your password has been compromised, please see the network administrator immediately. All passwords must be given to the Information Technology (IT) manager. Failure to do so will result in disciplinary action.

System users are held accountable for all the processing done with their password. For their own protection, employees must therefore ensure that their passwords are not shared with anyone other than designated personnel.

All computer programs designed for and used by Acupath are property of Acupath. No program or data should ever be copied for personal use or given to anyone without the express written consent of the Chief Executive Officer. All employees must be in compliance with all software licenses and all confidentiality rules. Under no circumstances are copies of software to be installed on Acupath's computers unless the appropriate license to do so has been obtained. If you have any concerns with software



**ACUPATH**
LABORATORIES, INC.

licenses or operations of computers and/or computer software, you must speak to the Information Technology officer of Acupath, who may be emailed at IT@acupath.com.

Acupath computer systems and other technical resources are provided for the use of Acupath business and are to be reviewed, monitored and used in the pursuit of Acupath business. As a result, computer software and other data are readily available to numerous persons. If, during the course of employment, an employee performs or transmits work on an Acupath computer or other technical resource, his or her work is subject to the review and examination of Acupath. Acupath expressly reserves the right to search an employee's computer with or without notice, including monitoring of all emails by the Chief Executive Officer, the director of the human resources department and/or the Information Technology department.

If you transmit any Acupath business documents to any personal email account, including but not limited to accounts that you may use at yahoo.com, gmail.com; optionline.net, etc., you will be disciplined and you may be terminated from your employment by Acupath. No work or work-product shall be transmitted by you or to you to any other email account, other than the email account issued to you with the ending @acupath.com.

An employee may not make any copies, backups or duplications to any backup device, including but not limited to flash drives, external hard drives, etc., of any files that are on their computer at Acupath. Making copies, backups or duplications of any files from the Acupath computers may result in immediate termination of your employment.

An employee may only access files or programs that he/she has permission to enter. Unauthorized review of files, copying of software, dissemination of passwords, damage to systems, removal of files, removal of programs or software or improper use of information contained in the computer system may be grounds for disciplinary action, up to and including termination.

Acupath's property, such as computers, printers, laptops, cellular telephones, office telephones, modems, and beepers, are not to be used for personal use or for illegal activities. If Acupath provides you with a cellular telephone or pays for your monthly cellular telephone service, Acupath may obtain copies of all of your cellular telephone bill records without your consent. There should be no expectation of privacy in your use of Acupath's cellular telephone or a cellular telephone which payment for such service is reimbursed to you by Acupath. Bills and other documentation related to this type of equipment are the property of Acupath and may be reviewed and used only for purposes Acupath deems appropriate.



**ACUPATH**
LABORATORIES, INC.

If you need a program that is not installed on your computer, please contact the IT department and have the request authorized by the Chief Executive Officer. If you have files that are important and need backup, make sure you save them on your Z: drive so that Acupath backup system can back up the files.

If an employee uses any computer owned by Acupath for illegal purposes, used to visit illegal websites, or used for personal purposes, that employee may face immediate termination as an employee of Acupath

## Employee Privacy, Electronic Mail and Voice Mail

The entire computer system, hardware, and all data and information contained in it are the property of Acupath.   It has been provided for your use in conducting Acupath business only.  All communications and information transmitted by, received from, or stored in this system are Acupath's records and is Acupath's property.  The e-mail and computer system are to be used for Acupath's purposes only. Telephone systems at Acupath and for cell phones provided by Acupath for certain employees shall only be used for business purposes and may not be used for personal purposes.   Your voicemail password must be given to the Chief Executive Officer and to the IT manager. Acupath has the right to retrieve your voicemail messages and Acupath has the right to monitor all of your telephone conversations while you are using Acupath telephone systems or devices.

Foul, inappropriate, or offensive messages, such as those including racial or sexual slurs, are prohibited. E-mail communications may not be used for non-business related communication, except for making arrangements for informal meetings that occur during the course of a normal business day.   E-mail shall not be used to solicit outside business ventures, political or religious causes.  Use of the E-mail system for personal purposes, such as advertising apartments for rent, tickets for sale, pets for adoption, etc.  or any other non-business purpose is strictly prohibited.  Use of any other E-mail system sponsored by an Internet Service Provider ("ISP"), such as MSN's Hot Mail, AOL, Facebook, Myspace, etc., for client communication or other Acupath  or business-related communication is prohibited unless authorized by the Chief Executive Officer.

Employees shall not use unauthorized codes or passwords to gain access to others' files.   Abuse of e-mail will subject the employee to discipline, up to and including termination.

Employees have no right of personal privacy in any matter stored in, created, received, or sent over Acupath e-mail, telephone or voice mail system.  Employees should never consider electronic communications to be private or secure.



**ACUPATH**
LABORATORIES, INC.

Employees are hereby notified that their e-mail messages and voice mail messages are subject to search and disclosure at any time, with or without notice. Employees are notified they should have no expectation of privacy concerning the e-mail or voice mail system or any other matters, data, or information on Acupath computer system. As owner of the e-mail and voice mail system, Acupath reserves the right to monitor, access, retrieve, and delete any information stored in, created, received, or sent over the e-mail or voice mail system, for any reason, without the permission of any employee, and without notice.

Even though we have the right to retrieve and read any e-mail or voice mail messages, those messages should still be treated as confidential by other employees and accessed only by the intended recipient. Employees are not authorized to retrieve or read any e-mail messages that are not sent to them. Any exception to this policy must receive the prior approval of the Chief Executive Officer.

Acupath equal employment opportunity policy and policies against sexual or other harassment apply to our e-mail system, and any violation of those policies are grounds for discipline, up to and including discharge. No e-mail messages should be created, sent or received if they contain intimidating, hostile or offensive material concerning sex, race, color, national origin, religion, sexual orientation, age, marital status, disability, pregnancy, or any other classification protected by law.

## Internet Policy

Certain employees may be provided with access to the Internet to assist them in performing their jobs. The Internet is a valuable source of information and research. Your use of the Internet is governed by this policy and the e-mail policy.

## Disclaimer of Liability for Use of Internet

We are not responsible for material viewed or downloaded by users from the Internet. The Internet is a worldwide network of computers containing millions of pages of information. Users are cautioned that many of these pages include offensive, sexually explicit, and inappropriate material. In general, it is difficult to avoid at least some contact with this material while using the Internet. In addition, having an e-mail address on the Internet may lead to receipt of unsolicited e-mail containing offensive content. Users accessing the Internet do so at their own risk.

## Duty not to Waste Computer Resources



related emails is PROHIBITED, and such use may result in your suspension or termination of employment.

## Illegal Copying

Employees may not illegally copy material protected under copyright law or make that material available to others for copying. Employee's are responsible for complying with copyright law and applicable licenses that may apply to software, files, graphics, documents, messages, and other material for which a registration fee is charged without first obtaining the express written permission of the Chief Executive Officer.

## Accessing the Internet

To ensure the security of Acupath computer system and to avoid the spread of viruses, employees accessing the Internet through computers attached to Acupath network must do so through an approved Internet firewall. Accessing the Internet directly by modem is strictly prohibited unless the computer you are using is not connected to our network and is approved for use by the Chief Executive Officer.

## Virus detection

Files obtained from sources outside our network, including disks brought from home, files downloaded from the Internet, news groups, bulletin boards, or other online service; files attached to e-mail; and files provided by clients or vendors may contain computer viruses that may damage Acupath's computer network. Employees should never download files from the Internet, accept e-mail attachments from outsiders, or use disks from non-Acupath sources, without first scanning the material with an approved anti-virus computer utility program by our IT department. If you suspect that a virus has been introduced into our network, notify the Chief Executive Officer and Information Technology department immediately.

## Social Media Policy

This policy is primarily intended to protect Acupath's legitimate business interests, including but not limited to, the protection of confidential and/or proprietary information belonging to Acupath, its clients, or its vendors. Additionally, this policy is intended to ensure that any representations or statements of an employee on social media are not improperly attributed to Acupath or its employees or agents.

This policy is meant to be read in conjunction with all other company policies. The policy is not intended to prohibit employee discussions about the terms and conditions



The wearing of pins or display of statements of any nature is expressly prohibited. Failure to follow any of the above rules will result in discipline, as well as the employee being sent home to change into appropriate clothing in conformity with the above policies.

## Solicitation, Distribution and Posting

Solicitation for any cause during work time is prohibited. Solicitation is allowed by employees only during non-working time. Non-working time means time during meal periods , breaks and before or after work.
Distribution of non-company electronic announcements or literature of any kind in work areas or during work time is prohibited. Employees are not permitted to post non-company literature on company property. Certain solicitations or distributions specifically designated and approved by management are allowed.
Persons not employed by Acupath are prohibited from soliciting or distributing literature on company property.

## Bulletin Boards

Acupath maintains a bulletin board on its premises. Information of interest and importance to employees is regularly posted on the bulletin board. You should check the bulletin board on a regular basis for information. The bulletin board is reserved for and restricted to posting of workplace notices, bulletins, and required government posters. In order to avoid misunderstanding, employees may not post material without prior authorization from the Chief Executive Officer. In no event may notices contain anything of a nature that may reflect unfavorably on Acupath employees or clients.

## Outside Employment and Interests

Employees who hold jobs in addition to their employment with Acupath must notify Acupath in writing of this employment. An employee's second job cannot adversely affect the work performance of an Acupath employee.

If you assist a competitor of Acupath or you work for a competitor of Acupath without Acupath's written consent, you will face discipline, which may include immediate termination.



**ACUPATH**
LABORATORIES, INC.

## EMPLOYEE RECEIPT ACKNOWLEDGEMENT FORM

The Employee Handbook describes important information about Acupath and I understand that I should consult the human resources department regarding any questions not answered in the Handbook.   I understand that it is my responsibility to review the Handbook and be familiar with all policies. I acknowledge that if there is any policy or provision in the Handbook that I do not understand, I should seek clarification from the human resources department.

I have entered into my employment relationship with Acupath voluntarily and acknowledge that there is no specified length of employment.   Accordingly, either Acupath or I can terminate the relationship at will, with or without cause, at any time, with or without notice.

Since the information, policies, and benefits described in the Handbook are necessarily subject to change by Acupath at any time and for any reason, with or without notice, I acknowledge that revisions to the Handbook may occur, except to Acupath policy of employment-at-will.   I understand that revised information may supersede, modify, or eliminate existing policies. Only the Chief Executive Officer of Acupath has the authority to adopt any revisions to the policies in this Handbook.

This Handbook replaces and supersedes all other employee handbooks or personnel policies that may have been distributed prior to this date.  This Employee Handbook does not supercede any other agreements, contracts and/or documents (collectively "Documents") executed by you, the employee and Acupath, which Documents shall remain in full force and effect.

Furthermore, I acknowledge that this Handbook is not a contract of employment and is not a legally-binding employment agreement. I have received the Handbook, and I understand that it is my responsibility to read and comply with the policies contained in this Handbook and any revisions made to it in the future.   Notwithstanding the foregoing, I agree that the policies as set forth in the Employee Handbook are binding upon me.

EMPLOYEE'S NAME (printed): _Minning Xie_

EMPLOYEE'S SIGNATURE: _____

COMPANY REPRESENTATIVE: _Megan Desmaro_

DATE RECEIVED: _5/20/12_

*Confidential*                           Page 73

2/29/2012 2/28/2012



**ACUPATH**
LABORATORIES, INC.

## EMPLOYEE RECEIPT ACKNOWLEDGEMENT FORM

The Employee Handbook describes important information about Acupath and I understand that I should consult the human resources department regarding any questions not answered in the Handbook. I understand that it is my responsibility to review the Handbook and be familiar with all policies. I acknowledge that if there is any policy or provision in the Handbook that I do not understand, I should seek clarification from the human resources department.

I have entered into my employment relationship with Acupath voluntarily and acknowledge that there is no specified length of employment. Accordingly, either Acupath or I can terminate the relationship at will, with or without cause, at any time, with or without notice.

Since the information, policies, and benefits described in the Handbook are necessarily subject to change by Acupath at any time and for any reason, with or without notice, I acknowledge that revisions to the Handbook may occur, except to Acupath policy of employment-at-will. I understand that revised information may supersede, modify, or eliminate existing policies. Only the Chief Executive Officer of Acupath has the authority to adopt any revisions to the policies in this Handbook.

This Handbook replaces and supersedes all other employee handbooks or personnel policies that may have been distributed prior to this date. This Employee Handbook does not supercede any other agreements, contracts and/or documents (collectively "Documents") executed by you, the employee and Acupath, which Documents shall remain in full force and effect.

Furthermore, I acknowledge that this Handbook is not a contract of employment and is not a legally-binding employment agreement. I have received the Handbook, and I understand that it is my responsibility to read and comply with the policies contained in this Handbook and any revisions made to it in the future. Notwithstanding the foregoing, I agree that the policies as set forth in the Employee Handbook are binding upon me.

EMPLOYEE'S NAME (printed): _Marco Sabini_

EMPLOYEE'S SIGNATURE: _____

COMPANY REPRESENTATIVE: _Morgan Desmond_

DATE RECEIVED: _3/20/12_

**Exhibit D**



6 John Street
Bethpage, NY 11714
1-888-540-5775

## Laboratory Information System

### About Us

M & M Medical Technology provides both commercial laboratories and physician-office laboratories with a user-friendly, state-of-the art Laboratory Information System (LIS) necessary for managing anatomic and diagnostic operations within one comprehensive dual-based (part windows, part web) software. Created by a team of medical information technology experts, unlike other LIS, M&M Medical offers software that can be accessed not only internally within network, but also remotely through the Internet.

### System Highlights

- Σ  Multiple Tests: Flow Cytometry, Bone Marrow & Pathology
- Σ  Whole cycle of work flow:  accession, grossing, signing out and reporting
- Σ  Able to run on both PC and Mac through Citrix. User is able to use it from anywhere as long as there is internet access.
- Σ  Customized pathology and flow reports. And also summary report
- Σ  Billing Summary
- Σ  EMR Interface
- Σ  TC/PC Capability
- Σ  Physician report reviewing and printing through the Internet
- Σ  Able to extract gate percentage data from PDF raw report
- Σ  Able to display PDF raw report and allow user to crop picture for report reference

### System Cost

#### a. Front

| | |
|---|---|
| Σ  Software System | $8,000 |
| Σ  Interface with EMR | Bi-direction $1,500 per vendor |
| | Uni-direction $1,000 per vendor |
| | $200 per extra client |

#### b.  Support & Maintenance

- Σ  3 months free maintenance
- Σ  $400 per month after 3 months

M & M

**M&M** Medical Technology: Leave IT to the Experts  |  Phone: **1-888 540-5775**

- Home
- Why M & M?
- Software Features
- Other Services
- Contact Us
- About Us

# Welcome to M & M Medical Technology

M & M Medical Technology provides both physician-office laboratories and commercial laboratories with a user-friendly, state-of the art Laboratory Information System necessary for managing anatomic and diagnostic operations within one comprehensive dual-based (part Windows, part web) software. Created by a team of medical information technology experts, unlike other Laboratory Information Systems, M&M offers a software that can be accessed not only internally within network, but also remotely through the web.

Already a user?

To log in to the application portal,
You can go to Log In page directly from here

Report View Users

Our Report generator give you with latest   technology and state-of-the-art tool designed report

Sign on to get Report

Contact Us

Contact M & M Medical Technology

2008 M & M Medical technology.

- Home
- Why M&M?
- Software Features
- Other Services
- About Us



M & M Medical Technology provides both physician-office laboratories and commercial laboratories with a user-friendly, state-of-the art Laboratory Information System necessary for managing anatomic and diagnostic operations within one comprehensive dual-based (part Windows, part web) software. Created by a team of medical information technology experts, unlike other Laboratory Information Systems, M&M offers a software that can be accessed not only internally within network, but also remotely through the web.

Why endure the time-consuming, costly process of building software when M & M can provide you with a highly secure and HIPAA compliant dual-based system, that is equipped with 24-hour surveillance by our IT experts for just a nominal monthly subscription. In addition, recognizing that each practice or pathology laboratory may have their own preferences, M&M can fully customize the anatomic pathology software to fulfill your specific needs and modify the system so that it is consistent with the specialty of your practice and/or laboratory, including for specialties Urology, Gastroenterology, and Dermatology.

Through our advanced technology and excellent service, we can offer customers the high-quality anatomic reporting software and data storage necessary for optimal patient care.

# Already a user? Login

# ReportView Users Login

M & M
**M&M Technology: Leave IT to the experts** | Phone: **1-718 000-0000**

- Home
- Why M & M?
- Software Features
- Other Services
- Contact Us
- About Us

# About Us

Learn More About M & M Medical Technology:

Dedicated to providing the pathology laboratory with the technology needed to provide the best quality patient care, M&M Technology prides itself on superior service and innovation.

Since 2008, we have been at the forefront of medical software / technology, constantly researching new ways to provide our customers with all the tools needed to improve efficiencies and accuracy while reducing costs substantially.

Our team of experts possess over twenty years of combined experience in the medical technology field. A strong level of expertise coupled with pure ingenuity, we have been able to produce a product that can help various pathology laboratories provide optimal patient care, from ease of use to time saving features.

2008 M & M Medical technology.

**M & M**
**M&M Technology: Leave IT to the experts** | Phone: **1-718 000-0000**

- Home
- Why M & M?
- Software Features
- Other Services
- Contact Us
- About Us

# Why Us

There are a lots of reasons why you customers choose us:

- **PRODUCTS AND SERVICES: REDUCE COSTS AND IMPROVE OPERATIONAL EFFICIENCY**

  M & M Medical Technology provides the ultimate solution package for managing anatomic pathology information in an efficient and accurate way. Our technology reduces processing time while assisting in analytical work, helping to easily maintain and transfer patient records and related information. We cater to the customer's needs, no matter the specialty, which means that we offer a service that can be tailored to the physician's and administrator's preference. We are able to help streamline all diagnostic related internal administrative services from electronic medical records to pathology report transcription.

- **Our Mission**

  Our mission is to provide a Laboratory Information System that will ultimately help pathology laboratories and physician groups to run more efficiently, which in turn, will improve patient care. With the latest changes in the medical field and the push to paper-less files, we recognize that an efficient software system and database is becoming a fundamental component of medical facilities and that an unreliable system can greatly inhibit a doctor's ability to effectively practice. We are committed to not only create software, but also to continually improve on what already is available in an effort to build a stronger health system.

2008 M & M Medical technology.

M & M

**M&M** Technical: **Leave IT to the experts**   |   Phone: **1-718 000-0000**

- Home
- Why M & M?
- Software Features
- Other Services
- Contact Us
- About Us

# Other Services

Take a look other services we support:

- **Technical Component / Professional Component Capabilities**

  M&M can set up a physician group with a Laboratory Information System to easily participate in a technical component / professional component model through high-tech anatomic pathology software.

- **Build IT Infrastructure**

  Another service that separates M&M from competitors is that not only do we create a dual-based platform for physician-owned laboratories / commercial anatomic pathology laboratories; we can also assist with building a network, an IT infrastructure. For more information, contact M&M Technology to find out how our IT experts can assist you with creating your own network-- a one-stop-shop.

- **Customization--Physician Owned Laboratories and Commercial Anatomic Pathology Laboratories, by Specialty**

  M&M's technology is fully customizable, which means we currently cater to different laboratories and different specialties. --whatever suits your needs. We are presently servicing clients practicing in Dermatology, Gastroenterology, and Urology, in addition to other specialties. Just contact us and ask about your customization options!

2008 M & M Medical technology.

M & M

**M&M Technology: Leave IT to the experts**   |   Phone: **1-718 000-0000**

- Home
- Why M & M?
- Software Features
- Other Services
- Contact Us
- About Us

# Software Features

Take a look we list here for some detail features:

- **Different User Roles and Assigned Permissions**

  Set certain permissions to users in different groups for increased security.

- **Efficient Recording-Keeping**

  Log and update patient records, and archive the information for future retrieval. Additional flexibility and configurability allows automated entry of supplementary fields, reducing staff workload and seamlessly tracking, sorting, and retrieving all data entered by the user.

- **Multiple Patient Search Options**

  Quickly search patient information using various queries and presets in addition to locating individual records based on the stage in the reporting process, from preliminary to finalization of pathology report.

- **Enhanced Reporting Capabilities**

  Print a single pathology report or a batch of reports in various formats as needed.

- **Customizable Diagnostic Templates**

  Produce and store diagnoses on similar anatomic pathology templates for efficient transcription and reporting during case diagnosing. Each specified template can have its own adequacy data field to be completed according to different diagnosis types and categories based on specialty, such as dermatology, gastroenterology, or urology.

- **Online Anatomic Pathology Requisitions**

  Eliminate additional paperwork by completing requisitions online. All test ordering can be performed by simply logging on, filling out a customizable requisition template, and clicking send. Not only does this provide greater efficiencies, but helps reduce errors due to illegible hand-writing and poor transcription.

- **High Quality Diagnostic / Pathology Reports**

Customize pathology reports to your liking and include up to four colored photographs of microscopic images.

- **Delivery of electronic pathology reports directly into an EMR or PMS**

  Transfer all finalized pathology reports seamlessly into Electronic Medical Records (EMR) or Practice Management Systems (PMS). Transmission can occur in various formats and is transmitted in the recommended HL-7 coding for enhanced compatibility.

- **Other Pathology Report Delivery Methods - Remote Printing**

  All pathology reports can print automatically after diagnosis is approved directly to a physician's office-- no courier necessary.

- **Specimen Tracking through Barcoding System**

  Track specimens throughout the entire diagnostic process through the implementation of a bar-coding system. From accessioning to pathology reporting, a user can view where the specimen is in the diagnostic process at all times, allowing for greater reassurance that the specimen has been delivered safely and turnaround is moving as expected.

2008 M & M Medical technology.

Physician Office Report Viewing and PrintingPathologist Sign In

# About NewPath Diagnostics laboratory

NewPath Diagnostics laboratory was established by a group of expert pathologists with extensive experience in academic and private pathology practice settings. NewPath physicians and supporting staff have been trusted by clinical doctors and their patients in the past few years.

## Our Principles:

- Patient care above everything else--We Maintain absolute integrity and highest standards
- It is a privilege to participate in caring your patients
- Your practice deserves the best possible pathology service

## Our Promises to you:

- Subspecialty-trained pathologists to provide the most trustworthy interpretations on your cases
- Fastest turn-around time, Stat pick-up specimens and rush delivery of reports if needed
- Availability of our specialist pathologists to discuss any questions you may have

## We Are at Your Service:

- We pick-up all specimens, Monday to Saturday
- Global services: Our pathologists read your cases and issue reports
- TC/PC services: We **have a large base of pathologists and will recommend an appropriate independent pathologists for your own Physician Office Laboratory**
- Reports back to you within 24 hours
- You decide how to receive reports:
  - Autofax to you as soon as report finalized
  - **On-line report printing: We provide color printer and supplies**
  - Hard copy by mail
  - Combination of above

© 2011 NewPath Diagnostics Laboratory.



Physician Office Report Viewing and Printing        Pathologist Sign In

# About NewPath Diagnostics Laboratory

NewPath Diagnostics laboratory was established by a group of expert pathologists with extensive experience in academic and private pathology practice settings. NewPath physicians and supporting staff have been trusted by clinical doctors and their patients in the past few years.

## Our Principles:

- Patient care above everything else--We maintain absolute integrity and highest standards
- It is a privilege to participate in caring your patients
- Your practice deserves the best possible pathology service

## Our Promises to you:

- Subspecialty-trained pathologists to provide the most trustworthy interpretations on your cases
- Fastest turn-around time, stat pick-up specimens and rush delivery of reports if needed
- Availability of our specialist pathologists to discuss any questions you may have

## We Are at Your Service:

- We pick-up all specimens, Monday to Saturday
- Global services: Our pathologists read your cases and issue reports
- TC/PC services: We **have a large base of pathologists and will recommend an appropriate independent pathologist for your own Physician Office Laboratory(POL).**
- Reports back to you within 24 hours
- You decide how to receive reports:
  - Autofax to you as soon as reports are finalized
  - **On-line report printing: We provide color printer and supplies**
  - Hard copy by mail
  - Combination of above

© 2011 NewPath Diagnostics Laboratory.

**Exhibit E**

Case 2:14-cv-06379-JS-AKT   Document 1   Filed 10/29/14   Page 99 of 102 PageID #: 99



# M&M TECHNOLOGY

Phone: **1-888 540-5775**

Home | Why M & M? | Software Features | Other Services | Contact Us | About Us



## Welcome to M & M Medical Technology

M & M Medical Technology provides both physician-office laboratories and commercial laboratories with a user-friendly, state-of-the art Laboratory Information System necessary for managing anatomic and diagnostic operations within one comprehensive dual-based (part Windows, part web) software. Created by a team of medical information technology experts, unlike other Laboratory Information Systems, M&M offers a software that can be accessed not only internally within network, but also remotely through the web

### Already a user?

To log in to the application portal,
You can go to Log In page directly from here

### Report View Users

Our Report generator give you with latest technology and state-of-the-art tool designed report

Sign on to get Report

### Contact Us

Contact M & M Medical Technology

2008-2013 M & M Medical Technology, Inc.

Case 2:14-cv-06379-JS-AKT   Document 1   Filed 10/29/14   Page 100 of 102 PageID #: 100

# M&M TECHNOLOGY

Phone: **1-888 540-5775**

Home | Why M & M? | Software Features | Other Services | Contact Us | About Us

## Why Us

There are a lot of reasons why our customers choose us:



- **PRODUCTS AND SERVICES: REDUCE COSTS AND IMPROVE OPERATIONAL EFFICIENCY**

M & M Medical Technology provides the ultimate solution package for managing anatomic pathology information in an efficient and accurate way. Our technology reduces processing time while assisting in analytical work, helping to easily maintain and transfer patient records and related information. We cater to the customer's needs, no matter the specialty, which means that we offer a service that can be tailored to the physician's and administrator's preference. We are able to help streamline all diagnostic related internal administrative services from electronic medical records to pathology report transcription.

- **OUR MISSION**

Our mission is to provide a Laboratory Information System that will ultimately help pathology laboratories and physician groups to run more efficiently, which in turn, will improve patient care. With the latest changes in the medical field and the push to paper-less files, we recognize that an efficient software system and database is becoming a fundamental component of medical facilities and that an unreliable system can greatly inhibit a doctor's ability to effectively practice. We are committed to not only create software, but also to continually improve on what already is available in an effort to build a stronger health system.

2008-2013 M & M Medical Technology, Inc.

**M&M** TECHNOLOGY

Phone: **1-888 540-5775**

Home    Why M & M?    Software Features    Other Services    Contact Us    About Us

## Software Features

Take a look we list here for some detail features:

- **Different User Roles and Assigned Permissions**
  Set certain permissions to users in different groups for increased security.

- **Efficient Recording-Keeping**
  Log and update patient records, and archive the information for future retrieval. Additional flexibility and configurability allows automated entry of supplementary fields, reducing staff workload and seamlessly tracking, sorting, and retrieving all data entered by the user.

- **Multiple Patient Search Options**
  Quickly search patient information using various queries and presets in addition to locating individual records based on the stage in the reporting process, from preliminary to finalization of pathology report.

- **Enhanced Reporting Capabilities**
  Print a single pathology report or a batch of reports in various formats as needed.

- **Customizable Diagnostic Templates**
  Produce and store diagnoses on similar anatomic pathology templates for efficient transcription and reporting during case diagnosing. Each specified template can have its own adequacy data field to be completed according to different diagnosis types and categories based on specialty, such as dermatology, gastroenterology, or urology.

- **Online Anatomic Pathology Requisitions**
  Eliminate additional paperwork by completing requisitions online. All test ordering can be performed by simply logging on, filling out a customizable requisition template, and clicking send. Not only does this provide greater efficiencies, but helps reduce errors due to illegible hand-writing and poor transcription.

- **High Quality Diagnostic / Pathology Reports**
  Customize pathology reports to your liking and include up to four colored photographs of microscopic images.

- **Delivery of electronic pathology reports directly into an EMR or PMS**
  Transfer all finalized pathology reports seamlessly into Electronic Medical Records (EMR) or Practice Management Systems (PMS). Transmission can occur in various formats and is transmitted in the recommended HL-7 coding for enhanced compatibility.

- **Other Pathology Report Delivery Methods - Remote Printing**
  All pathology reports can print automatically after diagnosis is approved directly to a physician's office--no courier necessary.

- **Specimen Tracking through Barcoding System**
  Track specimens throughout the entire diagnostic process through the implementation of a bar-coding system. From accessioning to pathology reporting, a user can view where the specimen is in the diagnostic process at all times, allowing for greater reassurance that the specimen has been delivered safely and turnaround is moving as expected.

2008-2013 M & M Medical Technology, Inc.

M&M telePath    Case 2:14-cv-06379-JS-AKT   Document 1   Filed 10/29/14   Page 102 of 102 PageID #: 102

# M&M TECHNOLOGY

Phone: **1-888 540-5775**



Home    Why M & M?    Software Features    Other Services    Contact Us    About Us

## Other Services

Take a look other services we support:

- **Technical Component / Professional Component Capabilities**
  M&M can set up a physician group with a Laboratory Information System to easily participate in a technical component / professional component model through high-tech anatomic pathology software.

- **Build IT Infrastructure**
  Another service that separates M&M from competitors is that not only do we create a dual-based platform for physician-owned laboratories / commercial anatomic pathology laboratories; we can also assist with building a network, an IT infrastructure. For more information, contact M&M Technology to find out how our IT experts can assist you with creating your own network-- a one-stop-shop.

- **Customization--Physician Owned Laboratories and Commercial Anatomic Pathology Laboratories, by Specialty**
  M&M's technology is fully customizable, which means we currently cater to different laboratories and different specialties. --whatever suits your needs. We are presently servicing clients practicing in Dermatology, Gastroenterology, and Urology, in addition to other specialties. Just contact us and ask about your customization options!

2008-2013 M & M Medical Technology, Inc.